John J. LENNON, Plaintiff, Appellant,

v.

Robert RUBIN, Secretary of the
Treasury, Defendant,
Appellee.

No. 98–1634.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1998.

Decided Feb. 3, 1999.

Edward L. Hoban for appellant.

Rayford A. Farquhar, Assistant U.S. Attorney, with whom Donald K. Stern, U.S. Attorney, was on brief, for appellee.

Before BOUDIN, Circuit Judge, GIBSON, Senior Circuit Judge,* and LYNCH, Circuit Judge.

* Of the Eighth Circuit, sitting by designation.

LYNCH, Circuit Judge.

John J. Lennon filed an action asserting that his employer, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") in the Department of the Treasury, retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII for filing age discrimination claims, discriminated against him in violation of Title VII on the basis of his status as a white male, and violated the Privacy Act through prohibited recordkeeping and disclosure of information. Lennon appeals from Judge Young's dismissal of his retaliation claims and Judge Lindsay's grant of summary judgment to the defendant on Lennon's remaining claims. We affirm.

We outline the most salient facts only briefly. Lennon was a "GS–1811–12, Criminal Investigator, Special Agent" at ATF. Prior to November 1992, he made a number of age-based discrimination and retaliation complaints against Terence McArdle, the "Special Agent in Charge" of the Boston ATF office who was one of Lennon's supervisors. "On November 10, 1992, while driving in an automobile with [an African–American ATF agent], as the result of a near accident, Lennon made a spontaneous remark that would be considered racially derogatory." Amended Complaint ¶ 6. After the agent complained, Lennon was suspended for three days.

On April 17, 1995, the ATF announced a vacancy for a GS–1811–13 Senior Operations Officer, for which Lennon applied and was placed on the "best qualified" list. McArdle ultimately selected Joycelyn Christopher, an African–American woman, to fill the position.

Lennon filed suit on October 16, 1996. After the defendant moved to dismiss all of the retaliation claims, Judge Young granted the motion, stating in a written order that the Title VII retaliation counts failed to state a claim because Lennon's underlying complaints of discrimination had been based on age, not on race, color, sex or national origin. Both parties subsequently moved for summary judgment on the remaining claims. In a ruling from the bench, Judge Lindsay de-

nied Lennon's motion and granted summary judgment to the defendant on the discrimination and Privacy Act claims, remarking with respect to the former that "if the plaintiff could make a prima facie case, he is unable to establish a triable issue[ ] that the ... nondiscriminatory reason[ ] offered by the government [is] pretext."

■ We review the disposition of a motion to dismiss de novo, taking the alleged facts to be true. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998). We likewise review the district court's grant of summary judgment de novo, considering the facts in the light most favorable to the nonmoving party. *See Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995). However, we review the district court's decision as to "the evidentiary materials it will consider in deciding a motion for summary judgment" only for "a clear abuse of discretion." *EEOC v. Green*, 76 F.3d 19, 24 (1st Cir.1996); *see also Schubert v. Nissan Motor Corp.*, 148 F.3d 25, 29–30 (1st Cir.1998).

■ We reject Lennon's challenge to the district court's dismissal of his Title VII claims for retaliation based on age discrimination complaints. Lennon grounds his argument that Title VII covers age-related retaliation complaints on the language of 42 U.S.C. § 2000e–16(c), which protects employees of the federal government. That section states:

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge ..., an employee ..., if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title....

Lennon notes that Executive Order 11478 has been amended to prohibit agencies from discrimination based on age and claims that this prohibition is incorporated into Title VII through the reference to the Executive Order.

Lennon's argument founders on the plain language of the statute. The provision on which Lennon relies specifically states that the complaint of discrimination must be "based on race, color, religion, sex or national origin." Executive Order 11478 is merely one example of the various prohibitions on executive branch discrimination that such a complaint may be "brought pursuant to." 42 U.S.C. § 2000e–16(c); *see also id.* § 2000e–16(a) (stating that federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin"); *cf. Fears v. Catlin*, 377 F.Supp. 291, 293 (D.Colo.1974) (noting that Executive Order 11478 was enacted in 1969 and that "it appears that § 2000e–16(c) was meant to cover claims that arose prior to the enactment of [Title VII's section on federal employees]"). The fact that the Executive Order forbids age discrimination as well as race and sex discrimination does not expand the categories on which a complaint may be based or the reach of Title VII.

Further, Lennon's construction would render superfluous the ADEA's prohibition on age discrimination against federal government employees. *See* 29 U.S.C. § 633a; *see also Lavery v. Marsh*, 918 F.2d 1022, 1025 (1st Cir.1990) ("[T]he ADEA amendment prohibiting federal-sector age discrimination was patterned after 42 U.S.C. section 2000e–16(a), (b), the amendments to Title VII extending that statute's protection to federal employees."). Accordingly, since Lennon's previous complaints related to age rather than to a category protected under Title VII, his retaliation claims are not cognizable under Title VII.

■ Lennon also challenges the district court's dismissal of his claim of retaliation in violation of the ADEA. We are hampered in our review of this dismissal by the fact that neither Lennon nor the defendant ever identifies the basis given by the court for the ruling. Lennon, without record support,

states that the court's ruling was based on an interpretation of the relevant statute; the government's motion to dismiss suggests it was based on the facts alleged. A transcript of the judge's ruling from the bench has not been provided by the parties and does not appear in the record transferred from the district court (most likely because no one ordered a transcription of the proceedings). "It is appellants' responsibility to provide the court with intelligible briefs and appendices sufficient to support their points on appeal, failing which the court in its discretion ... may scrutinize the merits of the case insofar as the record permits, or may dismiss the appeal if the absence of a [record] thwarts intelligent review. Accordingly, ... wherever material uncertainties result from an incomplete or indecipherable record and impede or affect our decision, we resolve such uncertainties against appellants." *Credit Francais International, S.A. v. Bio–Vita, Ltd.*, 78 F.3d 698, 700–01 (1st Cir.1996) (citations and internal quotation marks omitted). Lennon has not adequately provided a record and his discussion of this claim is a cursory one (including no analysis of the statute that apparently needs to be interpreted and consisting of an assertion that he has established a prima facie case and a citation to an ADEA case involving a federal employee that did not analyze 29 U.S.C. § 633a, the relevant ADEA section). *See generally United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on

its bones."). We decline to disturb the district court's ruling.[1]

■ We also uphold the district court's grant of summary judgment on Lennon's Title VII race and sex discrimination claims. As an initial matter, we find no abuse of discretion in the district court's denial of Lennon's motion to strike the declaration of Daniel M. Hartnett. That declaration concerned which ATF employee had official responsibility to fill the Senior Operations Officer position that Lennon claims he was illegally denied. The motion to strike was based on an alleged lack of personal knowledge by the declarant and on the contention that the declaration drew a legal conclusion.[2] However, the district court could reasonably have found that Hartnett, former Deputy Director and Associate Director of Law Enforcement at ATF, was competent to discuss the existence and effect of various ATF orders that were issued during his tenure.

■ In any event, eliminating Hartnett's declaration from consideration in connection with the summary judgment motions would not make a difference in the outcome. *See New England Anti–Vivisection Soc'y, Inc. v. United States Surgical Corp.*, 889 F.2d 1198, 1204 (1st Cir.1990). Lennon focuses on the wrong question. He focuses on the selecting authority, argues that through the mechanical operation of various ATF orders there was no delegation of selecting authority for the position at issue for a period of approximately four years, and concludes that "[t]he penalty for not being completely faithful to you own plan [sic] is you lose." But Lennon

---

1. As appears later, the remaining claims were properly dismissed on summary judgment; this suggests on the merits that the defendant's non-discriminatory rationale for its actions, even in the face of a possible ADEA retaliation claim, would prevail.

2. Apart from Exhibits 14 and 15 to defendant's statement of undisputed facts, both of which are discussed below, Lennon's motion to strike referenced only the Hartnett declaration and attacked that declaration only on the grounds described above. Lennon's initial brief in this court raises an additional objection to this declaration—that it "does not conform to the requirements of the appropriate statute"—and his reply brief extends this and similar challenges to the other declara-

tions and affidavits that the defendant submitted to the district court in connection with the motions for summary judgment. Lennon has waived all of the arguments not raised before the district court, *see Davis v. Sears, Roebuck & Co.*, 708 F.2d 862, 864 (1st Cir.1983) (citing *Lacey v. Lumber Mut. Fire Ins. Co.*, 554 F.2d 1204, 1205 (1st Cir.1977)); *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 114 & n. 3 (2d Cir. 1987); *see also Sammartano v. Palmas del Mar Properties, Inc.*, 161 F.3d 96, 97 (1st Cir.1998); *United States v. Brennan*, 994 F.2d 918, 922 n. 7 (1st Cir.1993) (noting the "well settled" rule that legal arguments made for the first time in an appellant's reply brief are tardy), and we do not at any rate find those arguments convincing.

never contests the fact that an ATF employee named Terence McArdle actually chose an African–American woman, Joycelyn Christopher, over Lennon for the operations position, or that the ATF enforced McArdle's choice. Whether McArdle lost his official authorization is not determinative of whether the actual selection was discriminatory on the basis of race or sex, and does not itself invalidate the defendant's articulation of a "legitimate, nondiscriminatory reason" for the employment action.[3] *Udo,* 54 F.3d at 12 (internal quotation marks omitted).

Defendant did indeed articulate such a nondiscriminatory reason (we bypass whether Lennon adequately established a prima facie case of race and sex discrimination). Defendant presented evidence that the Senior Operations Officer position requires, inter alia, an ability to work well with others, to exercise discretion, tact, and diplomacy, and to resolve conflicts. Defendant also presented evidence that, while Christopher (the person selected) excelled in these areas and had successfully performed some of the required functions, Lennon had difficulty working with others, was not tactful, and voiced his opinions without restraint. Defendant documented a number of specific incidents to back up these assessments, including one in which Lennon used a racially derogatory term in front of an African–American ATF agent with whom he was working.

We have carefully examined all of the evidence presented by Lennon, including the evidence that Lennon claims was not considered by the district court, and we agree with the district court's conclusion that Lennon did not counter the defendant's articulated reason by "introduc[ing] sufficient evidence ... (1) that the employer's articulated reason for [its treatment of] the plaintiff is a pretext, *and* (2) that the true reason is discriminatory." *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 674 (1st Cir.1996) (emphasis added); *see also Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12–13 (1st Cir.1998). Taken most favorably to Lennon, some of the evidence he presented to the district court might raise a suggestion of pretext, but a reasonable factfinder could not make a finding of discriminatory animus. *See Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir. 1997) (en banc) ("Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility."), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

 The district court also correctly granted summary judgment on Lennon's claim of improper disclosure of records in violation of the Privacy Act. Lennon came forward with a memo from one M.J. Wilkins, an employee in the ATF Employee and Labor Relations Branch, stating that she was forwarding a package of materials relating to Lennon to the "ATF EEO Task Force," a group that included individuals from outside the agency. However, Wilkins testified that she actually gave the package only to Marjorie Kornegay, the ATF's Assistant Director for Equal Employment Opportunity Programs and a member of the Task Force, and Kornegay declared that she never gave the package to the other Task Force members and that the Task Force never reviewed any material relating to Lennon. *See* 5 U.S.C. § 552a(b)(1). Lennon weakly responds that whether the file was actually reviewed by the Task Force "is the question of fact that the plaintiff wants decided by a fact finder, not an affidavit," and that the question "cannot be decided by some sort of statement from Kornegay." These arguments misapprehend Lennon's burden at the summary judgment stage, where "[b]rash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient." *Dow v. United Bhd. of Carpenters & Joiners,* 1 F.3d 56, 58 (1st Cir.1993); *see also Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) ("Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant

---

**3.** To the extent that departure from the defendant's official procedures might be reasonably found and construed as evidence of pretext in this case, *cf. Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 17 & n. 8 (1st Cir.1998), we incorporate that evidence into our consideration below of the third step of the burden-shifting test.

bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion."). On the evidence presented, no reasonable factfinder could find that there was an impermissible disclosure.

Finally, our de novo review discloses no error in the district court's grant of summary judgment for the defendant on Lennon's Privacy Act claim that the defendant intentionally or willfully maintained illegal systems of records that had an adverse effect on him. *See* 5 U.S.C. § 552a(g)(1), (4). We pause only to note that the district court did not abuse its discretion in failing to strike Exhibits 14 and 15 to defendant's statement of undisputed material facts, which consisted of charts listing and describing each allegedly illegally maintained record and citing a source of authority for the maintenance of each record. Lennon contends that these exhibits were not authenticated and do not fall into the class of materials identified in Federal Rule of Civil Procedure 56. However, since all but one of the records listed and described in the exhibits were separately reproduced elsewhere in defendant's submission, and since the remainder of the exhibits consists of citations to and quotations from legal authority, the district court was entitled to consider the exhibits, which were referenced in defendant's memoranda of law, as legal argument not subject to strictures on evidentiary submissions.

We have considered all of Lennon's properly presented arguments and find them without merit. Accordingly, the judgment of the district court is *affirmed.*