**Stephen CENTOLA, Plaintiff,**

v.

**John E POTTER, Postmaster General and United States Postal Service,[1] Defendants.**

**No. CIV. A. 99–12662–NG.**

United States District Court, D. Massachusetts.

Jan. 29, 2002.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), John E. Potter, the new Postmaster General, is substituted for William J. Henderson, his predecessor.

Scott A. Lathrop, Groton, MA, for Plaintiff.

Andrew L. Freeman, Special Office–U.S. Postal Service, Anthony Rice, Windsor, CT, for Defendants.

### MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GERTNER, District Judge.

This case raises important questions concerning the extent to which Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") reaches allegations of employment-related discrimination on the basis of sex and sexual orientation.

Plaintiff, Stephen Centola ("Centola"), has brought this action against the defendants, John Potter, Postmaster General, and the United States Postal Service (together "Defendants") under Title VII and Executive Orders 13,087 and 11,478. Centola alleges that over a seven-year period of employment by the Postal Service, his co-workers continuously tormented him by making comments and leaving photographs which may be characterized as mocking his masculinity, portraying him as effeminate, and implying that he was a homosexual. When he complained about this oppressive conduct to his supervisors, they responded by suspending and firing him because of his complaints.

The Defendants now move for summary judgment on the following grounds: (1) Title VII does not prohibit discrimination based upon sexual orientation, (2) Title VII does not proscribe retaliation against an employee who has opposed discrimination based on sexual orientation, and (3) Executive Orders 11,478 and 13,087 do not establish a private cause of action for federal employees who have been discriminated against on the basis of their sexual orientation.

Because Centola has provided sufficient evidence to support the inference that he was harassed and retaliated against because of his sex and his failure to conform with his co-workers' sexual stereotypes, I must deny the Defendants' request for summary judgment on these claims. However, Centola cannot assert a private cause of action based solely on Executive Orders 13,087 and 11,478. As a result, the Defendants' Motion for Summary Judgment [docket entry # 14] is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Postal Service employed Centola as a letter carrier for over seven years.[2]

---

**2.** For the purposes of this summary judgment motion, I view the facts in the light most

During the course of his employment, Centola's co-workers harassed him by making sexually derogatory comments towards him and leaving signs and cartoons mocking him at his "case" (work space). Although Centola is homosexual, he never disclosed his sexual orientation to any of his co-workers or managers.

On one occasion, Centola's co-workers placed a sign stating "Heterosexual replacement on Duty" at his case. Co-workers taped pictures of Richard Simmons "in pink hot pants" to Centola's case. Centola Deposition at 7:18–8:4. Fellow carriers asked Centola if he would be marching in a gay parade and asked him if he had gotten AIDS yet. At other times, his co-workers called him a "sword swallower" and antigay epithets. His co-workers also placed cartoons mocking gay men at his case. Centola testified that this harassment was "a constant thing." *Id.*

Centola's supervisors and managers also would treat Centola differently than other male and female letter carriers. Managers would follow Centola, but not others, into the bathroom to check on him. They also permitted other carriers, but not Centola, to leave their cases while they were sorting mail in order to get coffee. Supervisors repeatedly disciplined him more severely than others for minor conduct and attendance infractions.[3]

Centola reported the incidents of harassment by his co-workers and supervisors over the years of his employment. Despite these complaints, the harassment continued. In fact, Centola alleges that his complaints to management about the harassment only resulted in further harassment and retaliation. Finally, on July 22, 1998, Centola was terminated.

Centola filed a Discrimination Complaint with the Postal Service on September 12, 1998. On December 30, 1999, Centola filed his current Complaint. The Complaint alleged that the discrimination suffered by Centola "included discrimination on account of Centola's sex—male" and "included discrimination on account of Centola's sexual orientation—homosexual." The Defendants now move for summary judgment.

## II. *LEGAL ANALYSIS*

### A. *Summary Judgment Standard*

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The term "material" means that "a contested fact has the potential to change the outcome of the suit ... if the dispute over it is resolved favor-

favorable to the plaintiff, the non-moving party. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981).

**3.** Management brought the following disciplinary actions against Centola: on July 27, 1996, a "Listen 7–Day Suspension" for allegedly failing to be regular in attendance; on September 18, 1998, a "Notice of 7–Day Suspension" for allegedly failing to be regular in attendance; on March 26, 1998, a "Notice of 14–Day Suspension" for allegedly failing to be regular in attendance; on May 13, 1998, a

"Notice of 14–Day Suspension" for allegedly violating the Postal Service Standards of Conduct; on June 15, 1998, a "Notice of 14–Day Suspension" for allegedly failing to perform his duties in a satisfactory manner and, on July 22, 1998, a "Notice of Removal," terminating his employment, for allegedly failing to meet the requirements of his position. For all of these actions taken against him by management, Centola claims that he was disciplined "when similarly situated male and female carriers were not so disciplined."

ably to the nonmovant," while the term "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

In determining the disposition of a summary judgment motion, the Court views the record and draws inferences in a light most favorable to the non-moving party. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir.1981). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 12 (1st Cir.1994).

### B. *Harassment Under Title VII*

#### 1. *The Role Of Sex Stereotyping*

The Defendants argue that I should dismiss Centola's Title VII sexual harassment claims because Title VII does not prohibit discrimination based upon sexual orientation in the workplace. Title VII makes it unlawful "for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[4] 42 U.S.C. § 2000e–2(a)(1).

■ Indeed, the law is relatively clear that discrimination on the basis of sexual orientation is not barred under Title VII so long as the persons discriminating are not also discriminating on the basis of another prohibited characteristic, such as race or sex. *See Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir.1999) (regarding "as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment *simply* because of sexual orientation") (emphasis added); *Simonton v. Runyon,* 232 F.3d 33, 35–36 (2nd Cir.2000) (finding claim that plaintiff was discriminated against because of his sexual orientation alone was not cognizable under Title VII). By itself, Centola's claim that he was discriminated against on the basis of his sexual orientation cannot provide a cause of action under Title VII.

■ However, Centola does not only allege that he was discriminated against because of his sexual orientation. He also claims that he was discriminated against because of his sex. And harassment of a man by other men is actionable under Title VII so long as there has been "discriminat[ion] ... because of ... sex in the terms or conditions of employment." *Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal quotation marks omitted).

■ But the line between discrimination because of sexual orientation and discrimination because of sex is hardly clear. Sex stereotyping is central to all discrimination: Discrimination involves generalizing from the characteristics of a group to those of an individual, making assumptions about an individual because of that person's gender, assumptions that may or

---

4. The Equal Employment Opportunity Act of 1972 extended Title VII's protections to certain federal employees, including U.S. Postal Service employees. *See* 42 U.S.C. § 2000e–16(a). Section 2000e–16(a) provides, in part, that all personnel actions affecting covered employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.*

may not be true. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989),[5] for example, the Court held that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." And that principle applies whether the plaintiff is a man or a woman. As the First Circuit noted, "just as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, *see Price Waterhouse*, 490 U.S. at 250–251, 109 S.Ct. at 1775, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity." *Higgins*, 194 F.3d at 261 n. 4. *See also Simonton*, 232 F.3d at 38 (recognizing that "a suit [by a man] alleging harassment or disparate treatment based upon nonconformity with sexual stereotypes is cognizable under Title VII as discrimination because of sex"); *Ianetta v. Putnam Investments, Inc.*, 142 F.Supp.2d 131 (D.Mass.2001) (finding that plaintiff had stated cause of action under Title VII where he alleged that he was discriminated against because he did not conform to the male gender stereotype).[6] *Cf. Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215–16 (1st Cir.2000) (using Title VII

case law to find that cause of action existed under the Equal Credit Opportunity Act if defendant refused to give a loan application to a cross-dressing male because his dress "did not accord with his male gender.") Stated in a gender neutral way, the rule is: If an employer acts upon stereotypes about sexual roles in making employment decisions, or allows the use of these stereotypes in the creation of a hostile or abusive work environment, then the employer opens itself up to liability under Title VII's prohibition of discrimination on the basis of sex.

This is the nub of Centola's complaint: Co-workers and supervisors, he claims, discriminated against him because he failed to meet their gender stereotypes of what a man should look like, or act like. In so doing, they created an objectively hostile and abusive work environment in violation of Title VII.

 Centola does not need to allege that he suffered discrimination on the basis of his sex alone or that sexual orientation played no part in his treatment. Section 107 of the 1991 Civil Rights Act allows recovery based on proof of a "mixed motive," a combination of a lawful and an unlawful motive.[7] *See also Hopkins*, 490 U.S. at 240, 109 S.Ct. 1775 ("Title VII

**5.** In *Hopkins*, Price Waterhouse failed to promote Ann Hopkins, the only woman out of 88 candidates in her partnership class, after partners suggested that she take a "course in charm school" and "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235, 109 S.Ct. 1775.

**6.** In both *Higgins* and *Simonton*, the Circuit Courts refused to consider arguments based upon a sexual stereotyping theory at the appellate level because the plaintiffs had not properly raised these arguments first with the trial courts below. Here, however, Centola properly has alleged in his Complaint that the discrimination was "on account of Centola's

sex—male" and raised this argument with supporting factual evidence in his summary judgment papers and at oral argument. Thus, I may properly decide on the merits whether his claim should survive summary judgment after examining the relevant factual record before me.

**7.** It states, in pertinent part: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m).

meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations.") Thus, if Centola can demonstrate that he was discriminated against "because of ... sex" as a result of sex stereotyping, the fact that he was also discriminated against on the basis of his sexual orientation has no legal significance under Title VII.

A mixed motive approach is important here, precisely because of the difficulty in differentiating behavior that is prohibited (discrimination on the basis of sex) from behavior that is not prohibited (discrimination on the basis of sexual orientation). Sexual orientation harassment is often, if not always, motivated by a desire to enforce heterosexually defined gender norms. In fact, stereotypes about homosexuality are directly related to our stereotypes about the proper roles of men and women. While one paradigmatic form of stereotyping occurs when co-workers single out an effeminate man for scorn, in fact, the issue is far more complex. The harasser may discriminate against an openly gay co-worker, or a co-worker that he perceives to be gay, whether effeminate or not, because he thinks, "real men don't date men." The gender stereotype at work here is that "real" men should date women, and not other men.[8] Conceivably, a plaintiff who is perceived by his harassers as stereotypically masculine in every way except for his actual or perceived sexual orientation could maintain a Title VII cause of action alleging sexual harassment because of his sex due to his failure to conform with sexual stereotypes about what "real" men do or don't do.

■ In this case, however, I need not go so far. Centola never disclosed his sexual orientation to anyone at work. His co-workers made certain assumptions about him, assumptions informed by gender stereotypes. For example, they placed a picture of Richard Simmons "in pink hot pants" in Centola's work area. Without placing too fine a point on it, Richard Simmons "in pink hot pants" is hardly what most people in our society would consider to be a masculine icon. Certainly, a reasonable jury could interpret this picture, unaccompanied by any text, as evidence that Centola's co-workers harassed him because Centola did not conform with their ideas about what "real" men should look or act like. Just as Ann Hopkins was vilified for not being "feminine" enough, Centola was vilified for not being more "manly."

Although Centola never disclosed his sexual orientation to anyone at work, if Centola's co-workers leapt to the conclusion that Centola "must" be gay because they found him to be effeminate, Title VII's protections should not disappear. For the purposes of summary judgment, there is sufficient evidence to support the claim that Centola's co-workers punished him because they perceived him to be impermissibly feminine for a man.

### 2. Centola's "Admission"

■ To challenge this conclusion that Centola's co-workers discriminated against him because of his sex by using sexual stereotypes to create a hostile work environment, the Defendants point to what they assert is an admission by Centola in his deposition that he was discriminated and retaliated against only because of his sexual orientation, and not because of his sex or any sexual stereotyping. In one

**8.** *See* Sylvia A. Law, *Homosexuality and the Social Meaning of Gender,* 1988 Wis. L.Rev. 187 (1988). Professor Law argues that disapprobation of homosexual behavior is a reaction to the violation of gender norms, i.e., traditional concepts of masculinity and femininity, rather than merely scorn for homosexual practices.

portion of his deposition, Centola did agree that he was discriminated and retaliated against because of his sexual orientation and answered that he did not know of any other basis that caused these actions to occur. Centola Deposition at 36:14–25. The Defendants assert that this language establishes that Centola's persecutors harassed him on the basis of his sexual orientation and not on the basis of his sex.

However, in an earlier portion of his deposition, Centola agreed that he had been a victim of "sex discrimination" and detailed "what acts of sex discrimination occurred" to him. Centola Deposition at 7:14–8:4. So, at the very least, it seems that Centola himself has provided conflicting evidence about whether the discrimination that he endured was solely because of his sexual orientation or also because of his sex and sexual stereotyping.

■ More importantly, the Defendants fail to provide a compelling reason to justify why *Centola's* belief concerning why he was harassed should be dispositive on the question of his *harassers'* motivation. By making it unlawful "to discriminate ... because of ... sex," Title VII is clear that it is the harassers' discriminatory animus and mental state that are crucial to determining whether Title VII outlaws the harassers' conduct. 42 U.S.C. § 2000e–2(a)(1). The question to be answered here is—what motivated Centola's co-workers and supervisors to take these actions against Centola? Thus, while Centola's impression of why his fellow workers took these actions against him is relevant, it is not conclusive on the question of why they acted the way that they did. Centola cannot "admit" to a motivation that only existed in the minds of his harassers.[9]

Centola's conflicting deposition testimony must be weighed against the other evidence in the record for the purposes of summary judgment. As explained above, the Richard Simmons photograph strongly supports an inference that Centola's harassers discriminated against him because of his sex due to a sexual stereotype that Centola was not sufficiently masculine. While relevant, Centola's inconsistent testimony regarding his tormentors' motivations is not sufficient to refute this inference that he was discriminated against because of his sex.

■ Although Centola's Title VII sexual harassment claim has survived summary judgment, Centola still faces the difficult task of convincing a jury that his harassers' behavior was so objectively offensive that it altered the conditions of his employment. As the Supreme Court noted in *Oncale*, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale*, 523 U.S. at 81, 118 S.Ct. 998. However, regardless of whether Centola will ultimately convince a jury that his claim meets this standard, he has provided enough evidence to receive the opportunity to present his case.

Because Centola has carried his summary judgment burden of proving that his co-workers and supervisors discriminated against him because of his sex by using impermissible sexual stereotypes against him, the Defendants motion for summary judgment on Centola's Title VII sexual harassment claim is **DENIED**.

### C. *Retaliation Under Title VII*

Centola also raises a retaliation claim under Title VII. Title VII provides that "it

---

**9.** This is especially true where, as described above, the two doctrines—discriminating against someone for being a homosexual (be-

cause "real" men don't date other men), and discriminating against someone for being effeminate—overlap.

shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).

To establish a *prima facie* case of retaliation, Centola must show that: (1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996). In this case, the protected activity that Centola engaged in, and for which he alleges that he suffered retaliation, is the act of reporting discrimination and harassment against him to his employer. The employment activity or practice that Centola opposed need not be a Title VII violation so long as Centola had a reasonable belief that there was a Title VII violation, and he communicated that belief to his employer in good faith. *Higgins*, 194 F.3d at 261–62; *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990).

The Defendants argue first that Centola's retaliation claim fails because Centola did not oppose an employment practice made unlawful by Title VII. They assert that because sexual orientation discrimination is not illegal under Title VII, Centola was not engaging in protected conduct when he complained about this discrimination to his employers, and therefore, Centola fails to establish the first prong of his *prima facie* case.

The Defendants also point again to Centola's "admission" that he believed that he was being discriminated against only on the basis of his sexual orientation. They argue that Centola did not have an objectively reasonable belief that the discrimination he complained about was illegal be-cause he believed that he was harassed solely because of his sexual orientation, a characteristic that Title VII does not protect.

But the Defendants' arguments are unavailing. Centola complained about the actions taken against him. There is no evidence in the record that when he complained about these actions, he complained only about discrimination on the basis of his sexual orientation, and not on the basis of his sex. He did not characterize the harassment when he reported it. He just asked for it to stop.

Furthermore, even if Centola believed that he was being discriminated against solely on the basis of his sexual orientation, he has identified an issue of material fact as to whether the discrimination was, in fact, based on sexual stereotyping. Again, there is no evidence in the record concerning how Centola characterized the offending harassment in his complaints to his employers. As Centola never disclosed his sexual orientation to anyone at work, there is no evidence that Centola claimed that this discrimination was because of his sexual orientation. Even if Centola, in fact, believed that the discrimination was on the basis of sexual orientation, an unprotected characteristic, what he presented to his employers were events that, viewed in the light most favorable to him, constituted discrimination against him on the basis of his sex due to sexual stereotyping.

This fact distinguishes Centola's situation from *Hamner v. St. Vincent Hospital and Health Care Center, Inc.*, 224 F.3d 701 (7th Cir.2000), a case heavily relied on by the Defendants. In *Hamner*, the plaintiff's Title VII harassment claim failed because the harassment in the case was based solely on the plaintiff's sexual orientation and not on his sex and sexual ster-

eotyping. In fact, the opinion does not even mention *Hopkins* or its sexual stereotyping analysis. The Seventh Circuit also dismissed the plaintiff's retaliation claim because "the record only supports the conclusion that [the defendant's] harassment of [the plaintiff] was based on [the plaintiff's] homosexuality, and thus no reasonable jury could find that [the plaintiff] reasonably believed that his grievance was directed at an unlawful employment practice under Title VII." *Id.* at 707.

By contrast, Centola has asserted an *actionable* Title VII sex-based sexual harassment claim. As a result, *Hamner* is distinguishable, and Title VII protects Centola's conduct of complaining about this harassment to his employers.

██ Viewed in the light most favorable to Centola, he complained about an employment practice that violated Title VII, and his complaints led to a number of adverse employment actions against him. Centola therefore has established a *prima facie* case of retaliation. Once a *prima facie* showing has been made, the burden shifts to the Defendants to articulate a legitimate, nonretaliatory reason for its employment decision. *Fennell*, 83 F.3d at 535. Relying solely on their legal arguments concerning the permissibility of sexual orientation discrimination, the Defendants did not present any evidence to support a nonretaliatory reason for their employment decisions against Centola. As a result, genuine issues of material fact remain concerning the reasons behind the adverse employment actions taken against Centola, and the Defendants' motion for summary judgment on Centola's Title VII retaliation claim is DENIED.

**D.** *Executive Orders 13,087 And 11,-478*

██ Centola also asserts a private cause of action directly under Executive Orders 13,087 and 11,478. As amended by Executive Order 13,087, Executive Order 11,478 states, "[i]t is the policy of the Government of the United States ... to prohibit discrimination in employment because of race, color, religion, sex, national origin, handicap, age, sexual orientation, or status as a parent." Exec. Order No. 11,478, 3 C.F.R. 803 (1966–1970); Exec. Order No. 13,087, 63 Fed.Reg. 30,097. Section 10 of Executive Order 11,478 expressly states that the Order is applicable to the United States Postal Service. Exec. Order 11,478 at § 10.

██ To assert a judicially enforceable private cause of action directly under an executive order, a plaintiff must show (1) that the President issued the order pursuant to a statutory mandate or delegation of authority from Congress, and therefore the order had the force and effect of law, and (2) that the order's terms and purpose evidenced an intent to create a private right of action. *Independent Meat Packers Association v. Butz*, 526 F.2d 228, 234–35 (8th Cir.1975). In the absence of such a delegation of authority or mandate from Congress, the President may not act as a lawmaker on his own. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587–89, 72 S.Ct. 863, 96 L.Ed. 1153 (1952).

The terms of Executive Orders 13,087 and 11,478 do not reveal an intent to create a private cause of action. In fact, Section 11 of Executive Order 11,478 explicitly states, "[t]his Executive Order does not confer any right or benefit enforceable in law or equity against the United States or its representatives." Exec. Order No. 11,478 at § 11. By themselves then, Executive Orders 13,087 and 11,478 do not create a judicially enforceable private right of action for Centola.

Centola also makes an argument that Title VII itself applies to sexual orientation discrimination based on the language of 42 U.S.C. § 2000e–16(c), which protects employees of the federal government. That section states:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge ..., an employee ..., if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title....

42 U.S.C. § 2000e–16(c). In effect, Centola argues that Congress has given the President the ability to expand the scope of Title VII's protections by authorizing a civil action based on a complaint "brought pursuant to ... Executive Order 11,478 or any succeeding Executive orders."

The First Circuit has rejected an argument analogous to this one previously in *Lennon v. Rubin,* 166 F.3d 6 (1st Cir. 1999). In *Lennon,* claiming that he had been discriminated against because of his age, a former employee of the Bureau of Alcohol, Tobacco, and Firearms sued the federal government under Title VII. Specifically, he pointed to the text of 42 U.S.C. § 2000e–16(c) to claim that he could bring his age discrimination complaint under Title VII because Executive Order 11,478 forbids discrimination on the basis of age.

Relying on the plain language of 42 U.S.C. § 2000e–16(c), the First Circuit re-jected this argument. In doing so, it held that 42 U.S.C. § 2000e–16(c) clearly stated that a complaint of discrimination must be "based on race, color, religion, sex, or national origin" to grant a plaintiff a private cause of action under Title VII. 42 U.S.C. § 2000e–16(c); *Lennon,* 166 F.3d at 8. The fact that Executive Order 11,478 also forbids discrimination on the basis of age is irrelevant for the purposes of Title VII because Executive Order 11,478 does not "expand the categories on which a complaint may be based or the reach of Title VII." *Lennon,* 166 F.3d at 8.

By like reasoning, Executive Orders 11,-478 and 13,087 do not expand the reach of Title VII to protect against discrimination on the basis of sexual orientation. To the extent that Centola's claim of discrimination is based on sexual orientation, and not based on sex, neither Title VII nor Executive Orders 13,087 and 11,478 provide him with a private cause of action. Subsequently, the Defendants' motion for summary judgment on Centola's claims based on Executive Orders 13,087 and 11,478 is **GRANTED**.

### III. *CONCLUSION*

For the reasons stated above, the Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. The Defendants' motion for summary judgment on Centola's Title VII harassment claim is **DENIED**. The Defendants' motion for summary judgment on Centola's Title VII retaliation claim is **DENIED**. The Defendants motion for summary judgment on Centola's claims based on Executive Orders 13,087 and 11,478 is **GRANTED**.

**SO ORDERED.**