# United States Court of Appeals
## For the First Circuit

No. 01-1248

WILLIAM A. McCARTHY,

Plaintiff, Appellant,

v.

RICHARD KYLBERG, JR.,
COMMUNICOM COMPANY OF MASSACHUSETTS, LP,
CCA, INC., KYLBERG INVESTMENT COMPANY, LLC,
and MUZTAGH, LLC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch, Circuit Judge,

and Gertner,[*] District Judge.

Jeffrey M. Graeber with whom Graeber, Davis & Cantwell, P.C. was on brief for appellant.
Peter J. Korneffel, Jr. with whom Brownstein, Hyatt & Farber, P.C., Richard J. McCarthy and Edwards & Angell, LLP were on brief for appellees.

_____

[*]Of the District of Massachusetts, sitting by designation.

Per Curiam.  William McCarthy brought this suit against Communicom Co. of Massachusetts, CCA (Communicom's general and managing partner), Richard Kylberg (CCA's president), and others, seeking payment based on an alleged $1 million oral contract.  Because the district court granted summary judgment for defendants, we credit McCarthy's version of events and draw reasonable inferences in his favor and our review is de novo.  Lennon v. Rubin, 166 F.3d 6, 8 (1st Cir. 1999).  This is a diversity suit governed by Massachusetts law.

McCarthy was hired by Communicom in February 1995 as an at-will administrative consultant at a Boston radio station Communicom owned.  He was originally paid an hourly rate of $9.00 but in May 1995 was given an annual salary of $20,000.  On October 6, 1996, Kylberg offered McCarthy the position of station manager.  McCarthy accepted it the next morning; later that day, he accompanied Kylberg to the airport.

McCarthy claims that while the pair was waiting at an airline ticket counter, he asked Kylberg whether the station would be sold.  Kylberg responded that Communicom had no present intention of selling the station, but might if someone were "crazy enough to offer $7 million" for it.  According to McCarthy, Kylberg then added:

> "And I'll say to you guys, I have this offer. What do
> you think about it? Should we sell the radio station?
> Shouldn't we sell the radio station?" And he indicated
> that when push comes to shove, when it comes right down
> to it, it doesn't matter because he owns the radio
> station and he'll make the decision, but he indicated
> in quotes, "I don't think you'll have a problem with
> this if I go to Bill [McCarthy] and say Bill, here's
> your million dollars, Carl [DiMaria, CCA's vice
> president of operations] here's your million dollars,
> Neil [Gloude, CCA's vice president of finance], here is
> your million dollars. Are you going to have a problem
> with the fact that I sell the radio station and you get
> a million dollars out of it?" And I [McCarthy] said
> "No, I certainly won't." He said "Then don't worry
> about it."

Kylberg also told McCarthy that they would address his compensation at a later date.

On December 26, 1996, McCarthy received a written compensation plan from defendants. The plan supplemented McCarthy's annual salary of $20,000 with incentive bonuses tied to the station's advertising sales. Although the parties dispute whether plaintiff ever formally accepted the plan (he never rejected it), McCarthy never qualified for any bonus.

A few months later, in early 1997, McCarthy alleges that he again discussed the $1 million bonus with Kylberg, this time over dinner at a Legal Seafoods Restaurant. When asked to describe this conversation at his deposition, McCarthy said that it was "a repeat in essence, not verbatim" of what was said at the airport. He continued:

> It was almost, almost like a record, a stuck record
> where he indicated if somebody were crazy enough to pay
> him seven million dollars . . . [he] might consider it.

And he indicated that, again, the Neil Gloude statement, the Carl DiMaria statement, the Bill McCarthy statement about a million dollars. You're not going to have a problem if I hand you a million dollars and give you a million dollars as a result of the sale. . . .

[Counsel] . . . Did he tell you . . . "If I sell the station for over seven million dollars, I promise you that you will receive one million dollars."

[McCarthy] No. "You'll get a million dollars."

In September 1997 Communicom agreed to sell the station to One-on-One Sports for $8 million. Kylberg informed McCarthy of the deal, including the sale price; neither mentioned the $1 million bonus. When the deal closed in December 1997, a $200,000 bonus was given to DiMaria and Gloude, and a $5,000 bonus to McCarthy and another employee. Communicom paid McCarthy an additional $50,000 severance to secure his services until the end of January 1998; in February 1998, Communicom also agreed to pay McCarthy to help collect accounts receivable. On March 22, 1998, McCarthy sent a postcard to Communicom sending his "greetings" to the company, once again not raising the issue of the alleged $1 million bonus.

The next month, however, McCarthy sent a letter to Kylberg at CCA demanding the $1 million bonus. Kylberg refused and McCarthy brought this suit in the district court, claiming breach of contract. (Other claims were also made but have now been abandoned.) After discovery, the court granted summary judgment in favor of defendants. In rejecting the breach of contract claim, the court reasoned that

Kylberg's statements did not constitute an offer; that plaintiff had failed to provide any consideration for the promise; and that plaintiff never accepted the offer.  McCarthy has now appealed.

To create an enforceable contract, the parties must agree on material terms and manifest a present intention to be bound by the agreement.  Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000); Salem Laundry Co. v. New England Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280-81 (1st Cir. 1987) (applying Massachusetts contract law); see generally Farnsworth, Contracts § 3.6 (2d ed. 1990).  Summary judgment is appropriate when the evidence about the parties' intentions gleaned from their words and actions is so one-sided that no reasonable jury could find a contract.  See Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994).

McCarthy now concedes Kylberg's first statement is too indefinite to constitute a promise and instead focuses on the statement ("you'll get" a million dollars) allegedly made at the Legal Seafoods Restaurant.  It is not clear that the "you'll get" statement was a direct quote, as opposed to McCarthy's characterization of what Kylberg said.  We note that its recitation followed McCarthy's admission that the two conversations were "like a broken record."  Cf. Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000).  And McCarthy said Kylberg had repeated the statement made at the airport that "[y]ou're not going to have a problem if I hand you a

million dollars and give you a million dollars as a result of the sale."

In any event, the outcome is the same even if the word "get" was used somewhere in the alleged conversation (Kylberg denies that it occurred). Taking the whole body of alleged statements together, they suggest little more than a casual reassurance that McCarthy and others would gain in the unlikely event of a station sale. There were no words approximating a formal offer and none whatever of acceptance. This alone is not conclusive but two other contextual facts reinforce the inference.

First, no effort was ever made to reduce the alleged promise to writing. By contrast, other far less extraordinary promises were reduced to writing; the advertising sales incentive bonus plan, for instance, was detailed in the December 1996 compensation plan which made no mention of the $1 million promise. In fact, the company had a written policy stating that all employment agreements, including compensation terms, had to be in writing, although McCarthy says the policy was not strictly followed.

Second, McCarthy failed to raise the issue of a $1 million bonus when the circumstances obviously called for it, namely, when the sale occurred in December 1997. Nor did he make a claim later when he accepted his $5,000 bonus and $50,000 severance payments from Communicom. His delay in waiting until he left the company hardly

suggests that he believed from the outset that he had been promised $1 million.

All of these circumstances taken together, including words used and surrounding events, persuade us--as they persuaded the district judge--that no reasonable jury could find that the parties intended to create a contract. If Kylberg made the statements attributed to him, he may have encouraged hope of a reward; but he did not create a contractual obligation to provide one. That is the end of the matter.

<u>Affirmed</u>.