Dwayne SIMONTON, Plaintiff–
Appellant,

v.

Marvin T. RUNYON, Jr., Postmaster General, United States Postal Service; U.S. Postal Service, United States Postal Service, Defendants–Appellees.

Docket No. 99–6180.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 8, 2000

Decided: Aug. 22, 2000

Amended: Oct. 23, 2000

---

Frederick Ostrove, Leeds & Morelli, Esqs., Carle Place, N.Y., for Plaintiff–Appellant.

Paul Kaufman, Assistant United States Attorney, Loretta E. Lynch, United States Attorney for the Eastern District of New York (David L. Goldberg, Deborah B. Zwany, on the brief), Brooklyn, N.Y., for Defendants–Appellees.

Before: WALKER, Chief Judge, and SACK, and KATZMANN, Circuit Judges.

JOHN M. WALKER, JR., Circuit Judge:

Plaintiff-appellant Dwayne Simonton sued the Postmaster General and the United States Postal Service (together "defendants") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for abuse and harassment he suffered by reason of his sexual orientation. The United States District Court for the Eastern District of New York (Leonard D. Wexler, *District Judge*) dismissed Simonton's complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim, reasoning that Title VII does not prohibit discrimination based on sexual orientation. We agree.

We review *de novo* the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 (2d Cir.2000). We must accept all facts alleged in the complaint as true, and will affirm the dismissal only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Id.* (internal quotation marks and citation omitted). The facts of this case are all too familiar in their general form. Simonton was employed as a postal worker in Farmingdale, New York for approximately twelve years. He repeatedly received satisfactory to excellent performance evaluations. He was, however, subjected to an abusive and hostile work environment by reason of his sexual orientation. The abuse he allegedly endured was so severe that he ultimately suffered a heart attack.

For the sake of decency and judicial propriety, we hesitate before reciting in detail the incidents of Simonton's abuse. Nevertheless, we think it is important both to acknowledge the appalling persecution Simonton allegedly endured and to identify the precise nature of the abuse so as to distinguish this case from future cases as they arise. We therefore relate some, but not all, of the alleged harassment that forms the basis for this suit.

Simonton's sexual orientation was known to his co-workers who repeatedly assaulted him with such comments as "go fuck yourself, fag," "suck my dick," and "so you like it up the ass?" Notes were placed on the wall in the employees' bathroom with Simonton's name and the name of celebrities who had died of AIDS. Pornographic photographs were taped to his work area, male dolls were placed in his vehicle, and copies of Playgirl magazine were sent to his home. Pictures of an erect penis were posted in his work place, as were posters stating that Simonton suffered from mental illness as a result of "bung hole disorder." There were repeated statements that Simonton was a "fucking faggot."

■ There can be no doubt that the conduct allegedly engaged in by Simonton's co-workers is morally reprehensible whenever and in whatever context it occurs, particularly in the modern workplace. Nevertheless, as the First Circuit recently explained in a similar context, "we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir.1999). When interpreting a statute, the role of a court is limited to discerning and adhering to legislative meaning. The law is well-settled in this circuit and in all others to have reached the question that Simonton has no cause of action under Title VII because Title VII

does not prohibit harassment or discrimination because of sexual orientation.[1]

### ·I.

■ The Equal Employment Opportunity Act of 1972 extended Title VII's protections to certain federal employees, including U.S. postal service employees. *See* 42 U.S.C. § 2000e–16(a). Section 2000e–16(a) provides, in part, that all personnel actions affecting covered employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.* Simonton argues that discrimination based on "sex" includes discrimination based on sexual orientation. We disagree.

Admittedly, we have "little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). But we are informed by Congress's rejection, on numerous occasions, of bills that would have extended Title VII's protection to people based on their sexual preferences. *See, e.g.*, Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non–Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995); Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994); *see also Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085–86 (7th Cir.1984) (noting that Congress has rejected a number of proposed amendments to Title VII to prohibit discrimination based on sexual orientation). Although congressional inaction subsequent to the enactment of a statute is not always a helpful guide, Congress's refusal to expand the reach of Title VII is strong evidence of congressional intent in the face of consistent judicial decisions refusing to interpret "sex" to include sexual orientation. *See, e.g., Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir.1996)

1. Judge Katzmann concurs in the judgment on the basis of Part I. He does not join Part II, believing that it is not necessary to address the claims discussed in Part II on the ground that they were not presented to the district court and therefore have been waived.

**36**

("Title VII does not afford a cause of action for discrimination based upon sexual orientation."); *Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69, 70 (8th Cir.1989) ("Title VII does not prohibit discrimination against homosexuals."); *DeSantis v. Pacific Tel. & Tel. Co.,* 608 F.2d 327, 329–32 (9th Cir.1979).

Moreover, we are not writing on a clean slate. In *DeCintio v. Westchester County Med. Ctr.,* 807 F.2d 304 (2d Cir.1986), we reversed a plaintiff's verdict in a Title VII suit alleging that a male employer had passed over several male applicants for a promotion in order to hire a woman with whom the employer had a romantic relationship. Interpreting the definition of "sex," we held that

> the other categories afforded protection under Title VII refer to a person's status as a member of a particular race, color, religion or nationality. "Sex," when read in this context, logically could only refer to membership in a class delineated by gender, rather than sexual activity regardless of gender.... The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations.

*Id.* at 306–07; *see also DeSantis,* 608 F.2d at 329–30. Because the term "sex" in Title VII refers only to membership in a class delineated by gender, and not to sexual affiliation, Title VII does not proscribe discrimination because of sexual orientation.

Simonton argues that *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), permits us to revisit our holding in *DeCintio.* We disagree that such an opportunity presents itself here. In *Oncale,* the Supreme Court rejected a *per se* rule that same-sex sexual harassment was non-cognizable under Title VII. The Court reasoned that "nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant (or person charged with acting on behalf of the defendant) are of the

same sex." *Id.* at 79, 118 S.Ct. 998 (alteration in original). *Oncale* did not suggest, however, that male harassment of other males always violates Title VII. *Oncale* emphasized that every victim of such harassment must show that he was harassed *because he was male. See id.* at 80–81, 118 S.Ct. 998.

Subsequent to the Supreme Court's decision in *Oncale,* the First Circuit has reaffirmed the inapplicability of Title VII to discrimination based on sexual orientation. *See Higgins,* 194 F.3d at 259 ("[W]e regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation.") (citing *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 751–52 (4th Cir.1996), and *Williamson,* 876 F.2d at 70). We likewise do not see how *Oncale* changes our well-settled precedent that "sex" refers to membership in a class delineated by gender. The critical issue, as stated in *Oncale,* "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale,* 523 U.S. at 80, 118 S.Ct. 998. Simonton has alleged that he was discriminated against not because he was a man, but because of his sexual orientation. Such a claim remains non-cognizable under Title VII.

## II.

Simonton argues in the alternative that the harassment he suffered could be construed as discrimination based on sex rather than sexual orientation. He raises three arguments in this vein. Simonton first argues that, if the plaintiff's case in *Oncale* was sufficient to withstand summary judgment, he has pled facts sufficiently similar to those in *Oncale* to withstand dismissal. We disagree.

■■■ We are mindful that this case comes to us after a dismissal pursuant to Rule 12(b)(6), and that "[g]enerally a complaint that gives full notice of the circum-

stances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 712 n. 4 (2d Cir.1980). Nevertheless, there is no basis to infer from the complaint that the harassment Simonton suffered was because of his sex and not, as he urges throughout his complaint, because of his sexual orientation. In the context of male-female sexual harassment, involving more or less explicit sexual proposals, it is easy to infer discrimination because of sex since "it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale,* 523 U.S. at 80, 118 S.Ct. 998. And, as the Supreme Court stated, "[t]he same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual." *Id.* But since Simonton does not offer "direct comparative evidence about how the alleged harasser treated members of both sexes in [his] mixed-sex workplace," *id.* at 80–81, 118 S.Ct. 998, and does not allege a basis for inferring gender-based animus, we are unable to infer that the alleged conduct would not have been directed at a woman. Accepting as true all the facts that Simonton has pled, the only inference we can draw is that he was harassed because of his sexual orientation. As we have explained, such harassment is not cognizable under Title VII.

Simonton also argues that discrimination because of sexual orientation is discrimination based on sex because it disproportionately affects men. We decline to adopt a reading of Title VII that would also "achieve by judicial 'construction' what Congress did not do and has consistently refused to do on many occasions," *DeSantis,* 608 F.2d at 330. Therefore, this argument is unavailing.

■ Simonton next relies on *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), to argue that the abuse he suffered was discrimination based on sexual stereotypes, which may be cognizable as discrimination based on sex. We find this argument more substantial than Simonton's previous two arguments, but not sufficiently pled in this case. We express no opinion as to how this issue would be decided in a future case in which it is squarely presented and sufficiently pled.

The plaintiff in *Price Waterhouse* filed suit after having been denied partnership in an accounting firm, in part because she was "macho." *Id.* at 235, 109 S.Ct. 1775. She was advised that she could improve her chances for partnership if she would "walk more femininely, talk more femininely, dress more femininely, wear makeup, have her hair styled, and wear jewelry." *Id.* (internal quotation marks omitted). Justice Brennan, writing for the plurality, held that this was impermissible sex discrimination, and that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250, 109 S.Ct. 1775. Other courts have suggested that gender discrimination—discrimination based on a failure to conform to gender norms—might be cognizable under Title VII. *See Schwenk v. Hartford,* 204 F.3d 1187, 1202 (9th Cir.2000) (stating, in dicta, that Title VII encompasses instances in which "the perpetrator's actions stem from the fact that he believed that the victim was a man who 'failed to act like' one" and that " 'sex' under Title VII encompasses both sex—that is, the biological differences between men and women—and gender" (emphasis omitted)); *Higgins,* 194 F.3d at 261 n. 4 ("[J]ust as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotypical expectations of masculinity.") (citation omitted).

Simonton argues that the same theory of sexual stereotyping could apply here, as

the harassment he endured was based on his failure to conform to gender norms, regardless of his sexual orientation. The Court in *Price Waterhouse* implied that a suit alleging harassment or disparate treatment based upon nonconformity with sexual stereotypes is cognizable under Title VII as discrimination because of sex. This theory would not bootstrap protection for sexual orientation into Title VII because not all homosexual men are stereotypically feminine, and not all heterosexual men are stereotypically masculine. But, under this theory, relief would be available for discrimination based upon sexual stereotypes.

We do not reach the merits of this issue, however, as Simonton has failed to plead sufficient facts for our consideration of the issue. *See Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) ("A conclusory allegation without evidentiary support or allegations of particularized incidents, does not state a valid claim.") (alteration omitted) (quoting *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir.1990)). We do not have sufficient allegations before us to decide Simonton's claims based on stereotyping because we have no basis in the record to surmise that Simonton behaved in a stereotypically feminine manner and that the harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation. Moreover, because this theory was not presented to the district court, we are without the benefit of lower court consideration. In the circumstances, we think the wisest course is to defer consideration of the merits of such an argument to another case in which it comes to us after being properly pled and presented to the district court.

We have considered Simonton's remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the district court is AF-FIRMED.