Matthew SWIFT, Plaintiff,

v.

COUNTRYWIDE HOME LOANS,
INC., Defendant.

No. CV 09–1946.

United States District Court,
E.D. New York.

March 4, 2011.

Law Offices of Joshua Friedman, by Rebecca Houlding, Esq., Larchmont, NY, for Plaintiff.

Kaufman Borgeest & Ryan LLP, by Jonathan B. Bruno, Esq., New York, NY, Edwards Angell Palmer & Dodge, LLP, by Alice A. Kokodis, Esq., Boston, MA, for Defendant.

## *MEMORANDUM AND ORDER*

WEXLER, District Judge.

Plaintiff, a former employee of Defendant Countrywide Home Loans ("Countrywide"), commenced this case alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and Section 296 of the New York State Human Rights Law. Plaintiff, a homosexual male, claims that he was subject to a hostile work environment based upon a claim of "gender stereotyping," and that he was terminated from his employment in retaliation for his complaints of discrimination.

Presently before the court is Defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## *BACKGROUND*

### I. *Factual Background*

The facts set forth below are those not in dispute and are derived from deposition testimony, and other documents properly before the court.

Plaintiff is a homosexual male who was employed as an Underwriter Associate in Defendant's Melville, New York branch office from June 4, 2007, until his termination on October 17, 2007. Defendant claims that Plaintiff was terminated as part of a reduction in force, while Plaintiff claims he was subject to a hostile working environment and was terminated in retaliation for his complaints of discrimination.

When employed by Countrywide, Swift worked directly with Michael Giardina ("Giardina"), a senior loan officer. Swift knew Giardina prior to his employment at Countrywide and, prior to the incidents forming the basis of Plaintiff's claims, the two appear to have had a cordial relationship. Swift alleges that at some time during the summer of 2007, Giardina began calling Swift disparaging names and created a hostile working environment. In support of his claim, Swift alleges, *inter alia*, that Giardina referred to Swift as acting and dressing like "a girl," "a pussy" and a "fag," and told him to "man up." "Swift alleges that Giardina's comments left him feeling emasculated and deeply embarrassed."

Swift states that he made several complaints to Countrywide management about his treatment by Giardina. He alleges that following such complaints he was retaliated against by being subject to unwarranted work-related criticisms. Swift also argues that his complaints were not handled in accord with Countrywide's policy in that, *inter alia*, such complaints were not properly referred to the company's human resources department. Swift does not dispute that a company-wide reduction in force became necessary in or around August of 2007. He disputes, however, the contention that he was terminated because he was the last hired in the Melville office.

Instead, Swift contends that he was terminated in retaliation for his complaints of sexual harassment.

After his termination, and prior to the institution of this lawsuit, Swift sent a letter to Angelo Mozillo, Countrywide's then-CEO, complaining of his treatment at Countrywide. Plaintiff wrote that management in the Melville office was aware of his sexual orientation from the beginning of his employment and that he made no attempt to hide that orientation. Swift's letter to Mozillo states, in pertinent part:

It is my firm belief that this was a retaliatory termination due to the fact that I am a gay man in a "straight man's world." It is also my firm belief that I have been a victim of a hostile work environment and suffered extreme harassment while on the job.

I believe that this team of people has a deep hatred for gay people and that I am in fact a victim of that hatred and prejudice.

## II. *Defendants' Motion*

Defendant moves for summary judgment as to the hostile environment claim on the grounds that Plaintiff's complaint can only be interpreted as setting forth a claim for sexual orientation discrimination, and Title VII provides no remedy for such discrimination. Defendant further argues that, in any event, Swift cannot show that the alleged harassment ever rose to a level sufficient to state a hostile environment claim. Defendant seeks summary judgment as to the claims of retaliation on the grounds that Swift can show neither that he was engaged in protected activity nor a causal connection between any such activity and Defendant's employment action. Defendant further argues that it had legitimate, non-pretextual reasons for its employment decisions.

## DISCUSSION

### I. *Standard of Review on Summary Judgment*

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Communications of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir.2010). The moving party bears the burden of showing entitlement to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002), quoting, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984), quoting, *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996), quoting, *Research Automation Corp.*, 585 F.2d at 33.

■■■ In order to survive a motion for summary judgment, a Title VII plaintiff must satisfy the three-part burden-shifting test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. *Dawson v. Bumble & Bumble,* 398 F.3d 211, 216 (2d Cir.2005). If this burden is met, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action.

*Id.* If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.*, quoting, *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000).

II. *Hostile Environment "Gender Stereotyping" Claim*

A. *Legal Principles*

■■■ Title VII provides a remedy for disparate treatment based upon a hostile environment theory. *Raniola v. Bratton,* 243 F.3d 610, 621 (2d Cir.2001). Where a Title VII case is based upon gender, Plaintiff must show that the alleged acts of hostility occurred because of plaintiff's gender. This does not require a showing that the environment or acts of discrimination were sexual in nature; it does, however, require a showing that such acts occurred because of plaintiff's gender. *Pucino v. Verizon Wireless Communications, Inc.,* 618 F.3d 112, 117–18 (2d Cir. 2010). The use of words with sexual connotations or content is not necessary, standing alone, to state a hostile environment claim. *Raniola,* 243 F.3d at 617. Instead, the issue is whether there is evidence that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Durkin v. Verizon New York, Inc.,* 678 F.Supp.2d 124, 133 (S.D.N.Y.2009), quoting, *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring); *see Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

■■■ Interpretation of the requirement that Title VII protects only against

gender-based discrimination has led to the clear rule that the statute provides no remedy for discrimination based upon sexual orientation. *Simonton v. Runyon*, 232 F.3d 33, 37–38 (2d Cir.2000); *see Dawson*, 398 F.3d at 217–18. Title VII does, however, prohibit discrimination based upon "sex stereotyping." *Simonton*, 232 F.3d at 37–38; *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 251–52, 109 S.Ct. 1775, 104 L.Ed.2d 268(1989). Such a claim alleges, generally, that a plaintiff has been subject to discrimination because his or her conduct fails to "conform to gender norms." *Id.* Thus, for example, in *Price Waterhouse*, a claim was stated by a female employee who alleged that she was not promoted because her conduct was deemed too masculine. There, the claim was allowed to go forward as based upon gender, and not sexual orientation, because the claim of discrimination was not based upon any allegation that plaintiff was a lesbian, but on the allegation that her behavior did not conform to that deemed appropriate for members of her gender. *Price Waterhouse*, 490 U.S. at 251–52, 109 S.Ct. 1775.

■ A claim of gender stereotyping cannot be used to "bootstrap protection for sexual orientation into Title VII." *Dawson*, 398 F.3d at 218, quoting, *Simonton*, 232 F.3d at 38. Thus, courts have granted summary judgment dismissing claims alleged to constitute gender stereotyping, where it is clear that such claims have been crafted to avoid dismissal of claims that are in reality, claims of sexual orientation discrimination. *See Dawson*, 398 F.3d at 219.

B. *Disposition of the Hostile Environment Claim*

■ A review of the evidence before the court on this motion reveals that this a clear case where Plaintiff is attempting to bootstrap a non-cognizable claim of sexual orientation discrimination into a cognizable claim of gender stereotyping. As noted above, Swift alleges that he was referred to as, *inter alia*, a "fag," and a "girl." Even accepting the argument that such terms refer not to Plaintiff's homosexuality, but to the non-conformism of his behavior, other evidence points decidedly to a different conclusion. Most importantly, Plaintiff's complaint to Countrywide's CEO makes clear that his claim of discrimination is based upon his sexual orientation, and not gender stereotyping. Thus, before commencing this lawsuit, Plaintiff complained that he was a victim of discrimination because he is "gay man in a straight man's world," and was a victim of harassment due to an alleged "deep hatred for gay people." It is clear to the court that before commencing this lawsuit, and perhaps also before becoming aware that Title VII does not prohibit discrimination based upon sexual orientation, Plaintiff believed he was subject to discrimination based upon his sexual orientation. It was only after commencement of this action that he re-framed his claim as one for gender stereotyping. This is precisely the bootstrapping claim prohibited by Second Circuit precedent. *Accord Kiley v. American Society for the Prevention of Cruelty to Animals*, 2006 WL 3457690 *3–4 (S.D.N.Y.2006), *aff'd. mem.*, 296 Fed.Appx. 107 (2d Cir.2008); *Trigg v. New York City Transit Authority*, 2001 WL 868336 *6 (E.D.N.Y.2001).

For the foregoing reasons, the court construes Plaintiff's discrimination claim as alleging sexual orientation discrimination and Plaintiff creates no issue of fact to the contrary. Moreover, Plaintiff fails to set forth any facts supporting a claim of gender stereotyping. Accordingly, Plaintiff's hostile environment claims are dismissed.

## III. *Retaliation*

### A. *Legal Principles*

 Title VII provides a remedy for retaliation under certain circumstances. Specifically, the statute prohibits an employer from discriminating against an employee who: (1) has opposed an unlawful employment practice, or (2) has "participated in any manner" in an investigation under Title VII. 42 U.S.C. § 2000e–3(a). To state a claim of retaliation based upon the allegation that the plaintiff participated in protected activity, plaintiff must show "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir.2004) (citations omitted).

 Participation in protected activity includes expressing opposition to employment practices unlawful under Title VII as well as making a charge in a Title VII proceeding. *Fenn v. Verizon Communications, Inc.*, 2010 WL 908918 *10 (S.D.N.Y.2010); *see* 42 U.S.C. § 2000e–3(a). The activity complained of need not be activity that actually violated Title VII. Rather, a plaintiff alleging retaliation need only have a "reasonable, good faith belief that the employment practice complained of is unlawful." *Reed v. A.W. Lawrence & Co., Inc.* 95 F.3d 1170, 1178 (2d Cir.1996), quoting, *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 592 (2d Cir.1988); *see Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 111 n. 8. Thus, a complaint about conduct that is reasonably perceived to be sexually discriminatory conduct constitutes protected activity. *See Stathatos v. Gala Resources, LLC*, 2010 WL 2024967 *12 (S.D.N.Y. 2010). Retaliatory behavior by an employer is not limited to that which alters a plaintiff's conditions of employment, but is broadly defined to include any employment action taken that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fenn*, 2010 WL 908918 at *11; *see Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

### B. *Disposition of Retaliation Claim*

 Upon review of the evidence, the court holds that Plaintiff's retaliation claim is sufficient to withstand summary judgment. The fact that Title VII does not protect against sexual orientation discrimination does not necessarily negate Plaintiff's good faith belief that he engaged in protected activity when making a complaint of discrimination. Defendant is therefore not entitled to summary judgment as to the claim of retaliation on the ground that Plaintiff did not engage in protected activity. The court further holds that questions of fact exist with regard to the issues of causation and pretext. Accordingly, the court denies the motion for summary judgment dismissing Plaintiff's claims of retaliation.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. The court grants the motion with respect to Plaintiff's hostile environment claims, and denies the motion with respect to the retaliation claim. The Clerk of the Court is directed to terminate the motion. The parties are reminded that trial of this matter is scheduled to proceed on July 11, 2011.

SO ORDERED.