No. 16-0543 - *State of West Virginia v. Steward Butler*

**FILED**

**May 9, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting, joined by Justice Davis:

I respectfully dissent to the majority opinion because it evidences a fundamental misunderstanding of the three-word phrase, "because of . . . sex." W.Va. Code § 61-6-21(b) (2014). The statute clearly provides:

> If any person does by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the state of West Virginia or by the Constitution or laws of the United States, *because of such other person's* race, color, religion, ancestry, national origin, political affiliation or *sex*, he or she shall be guilty of a felony, and, upon conviction, shall be fined not more than five thousand dollars or imprisoned not more than ten years, or both.

*Id*. (emphasis added). As a matter of statutory application, the question to be answered is whether Counts I and III of the indictment in this case should have been dismissed where it is alleged that acts of violence were committed against persons because of their sex.

I am in agreement with the majority's quotations regarding statutory application and the absence of justification for judicial alteration of unambiguous statutory pronouncements. Thus, absent constitutional considerations, no construction is warranted

1

where a statute is unambiguous; only application of such statute is required. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); *see also* Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."); *cf.*, *Jackson v. Belcher*, 232 W.Va. 513, 518, 753 S.E.2d 11, 16 (2013) ("this Court is required to consider the *entire* language of a legislative enactment when presented with a case questioning the statute's meaning; we are not at liberty to selectively read a portion of the challenged statutory section and to disregard the remainder of the language employed by the Legislature."). This Court is consequently called upon to apply the "common, ordinary and accepted" meaning of the phrase "because of . . . sex."

In my opinion, the meaning of "because of . . . sex" is unambiguous.[1] Pursuant to the statute, a crime is considered a hate crime if certain conditions are met. In the hate

---

[1]Disagreement among the parties "as to the meaning or the applicability of [a statutory] provision does not of itself render [the] provision ambiguous or of doubtful, uncertain or unsure meaning." *Habursky v. Recht,* 180 W.Va. 128, 132, 375 S.E.2d 760, 764 (1988) (internal quotations and citations omitted). A statute "is not ambiguous simply because different interpretations are conceivable." *State v. Keller*, 19 P.3d 1030, 1035 (Wash. 2001) (footnote omitted), *cert. denied*, 534 U.S. 1130 (2002); *see also T. Weston, Inc. v. Mineral Cty.*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006) ("[t]he fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning." (internal citations omitted)).

2

crime setting, it is the *bias and motivation* that are ultimately being sanctioned. So, some of the pertinent questions become: What was the motivation for the conduct alleged to be criminal under West Virginia Code § 61-6-21(b)? Was the alleged conduct affected by the victim's sex? Was the crime committed because of the victim's sex? What is the meaning of the phrase "because of"?

Illustrations are useful in contemplating the meaning of the phrase. For instance, if a woman works for a corporation, fails to conform to that corporation's expectations of appropriate "femininity" or gender identity, and is denied opportunities for promotion, has she been discriminated against because of her sex? Yes, but not simply because she possesses female anatomical parts; rather, the actions occurred because she was perceived to be behaving outside the social expectation of how a woman should conduct herself in that corporate environment. But for her sex, she would not have been discriminated against. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-5(g)(2)(B) (1991), *as stated in Landgraf v. USI Film Prods*., 511 U.S. 244, 251 (1994). In *Price Waterhouse*, the United States Supreme Court applied prohibitions contained in Title VII of Civil Rights Act of 1964 making it unlawful for employers to discriminate "because of . . . race, color, religion, sex, or national origin" and found the phrase "because of . . . sex" includes treatment based on sex stereotyping where a female manager in an accounting firm was denied partnership and

advised she could improve her chances for partnership if she were to take "a course at charm school," "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Price Waterhouse*, 490 U.S. at 235 (internal quotation marks omitted)).[2]

If a Caucasian man is fired because he is married to an African-American woman, has he been discriminated against because of his race? Yes, but not simply because of the hue of his skin; rather, the act was committed because he was perceived to be behaving outside the social expectation of how a Caucasian man should behave with an African-American woman. But for his race, he would not have been fired. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 132-39 (2d Cir. 2008) (holding "that an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race" and "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's own race."); *Whitney v. Greater N.Y. Corp. of Seventh-Day Adventists*, 401 F. Supp. 1363, 1366 (S.D.N.Y. 1975) (holding employment termination was because of disapproval of interracial relationship); *Gresham v. Waffle House, Inc.*, 586 F. Supp. 1442, 1445 (N.D. Ga. 1984) ("but for their being white, the plaintiffs in these cases would not have

---

[2]*See also*, Zachary R. Herz, *Note*, *Price's Progress: Sex Stereotyping and Its Potential for Antidiscrimination Law*, 124 Yale L.J. 396 (2014).

been discriminated against."); *West Virginia Human Rights Comm'n v. Wilson Estates, Inc.*, 202 W.Va. 152, 160, 503 S.E.2d 6, 14 (1998) (evaluating Fair Housing Act and holding: "Consistent with that goal [to encourage fair housing opportunities for all people] and with the actual language of the Act, which specifically proscribes discriminatory treatment against *any person* based on race, we hold that under the West Virginia Fair Housing Act, a cause of action exists for discrimination directed against a tenant based on the race of those individuals with whom the tenant chooses to associate.").[3]

If a woman is denied an employment opportunity because she is a lesbian, has she been discriminated against because of her sex? Yes, but not simply because she possesses female anatomical parts; rather, the actions occurred because she was in a relationship with a woman and "[t]he discriminatory behavior does not exist without taking the victim's biological sex (either as observed at birth or as modified, in the case of transsexuals) into account." *Hively v. Ivy Tech Cmty. College of Ind.*, 853 F.3d 339, 346-47 (7th Cir. 2017). "Any discomfort, disapproval, or job decision based on the fact that the

---

[3]This Court also observed in *Wilson Estates* that we have "consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 when interpreting provisions of our state's human rights statutes." 202 W.Va. at 158, 503 S.E.2d at 12 (citation omitted).

complainant - woman or man - dresses differently, speaks differently, or dates or marries a same-sex partner, is a reaction purely and simply based on sex." *Id.* at 347.[4]

If a man stands on a corner kissing a man and is beaten because he is kissing a man, has he been assaulted because of his sex? Yes, but not simply because he possesses male anatomical parts; rather, the crime occurred because he was perceived to be acting outside the social expectations of how a man should behave with a man. But for his sex, he would not have been attacked.[5]

The indictment in this case properly alleged the attack occurred because of the victims' sex. Certain individuals are targeted for violence because they are perceived to violate socially-established protocols for gender and sex roles. The perpetrators in such instances have drawn conclusions that the victim has contravened certain unspoken rules, and

---

[4]The *Hively* court also astutely observed that a "because of race" analysis would lead to the inevitable conclusion that "both parties to [an] interracial marriage were being denied important rights by the state solely on the basis of their race." *Hively*, 853 F.3d at 347.

[5]As noted in *Hively*,

[T]o the extent that the statute prohibits discrimination on the basis of the race of someone with whom the plaintiff associates, it also prohibits discrimination on the basis of the national origin, or the color, or the religion, or (as relevant here) the sex of the associate. No matter which category is involved, the essence of the claim is that the plaintiff would not be suffering the adverse action had his or her sex, race, color, national origin, or religion been different.

*Id.* at 349.

6

the bias-motivated crime thus ensues. *See generally*, Karen Franklin, *Unassuming Motivations - Contextualizing the Narratives of Antigay Assailants, in Stigma and Sexual Orientation - Understanding Prejudice Against Lesbians, Gay Men and Bisexuals* 1, 15-20 (Gregory M. Herek ed., 1998).

The point of origin in the majority's opinion is sound; the statute indisputably does not include the words "sexual orientation."[6] But the majority concludes its analysis prematurely. Simply finding the absence of those two magic words fatal to the State's contention is the most effortless answer this Court could conjure. But while an answer without more in-depth analysis may be the path of least resistance, it also gives the shortest shrift to real critical thinking. The majority's answer is overly simplistic and constricted; the absence of the specific reference does not definitively resolve the question presented by this case.[7] The pertinent question is *not* whether the statute contains the words "sexual

---

[6]The court in *Hively* recognized "[t]he question before us is not whether this court can, or should, 'amend' Title VII to add a new protected category to the familiar list of 'race, color, religion, sex, or national origin.' 42 U.S.C. § 2000e-2(a). Obviously that lies beyond our power." 853 F.3d at 343. Amendments are not permissible; nor are they required. The statute in this case, as written, is sufficient to warrant the result espoused herein.

[7]Nor is the absence of statutory amendments particularly enlightening.

> Legislative history . . . is notoriously malleable. Even worse is the temptation to try to divine the significance of unsuccessful legislative efforts to change the law. Those failures can mean almost anything, ranging from the lack of necessity for a proposed change because the law already accomplishes the desired goal, to the undesirability of the change because a majority of the

(continued...)

7

orientation." Rather, it is whether the crime was committed *because of* the victims' sex. The phrase "because of . . . sex" encompasses the actions taken against the victims in this case.

An illuminating examination of the meaning of "because of . . . sex" was undertaken by Chief Judge Robert Katzmann in his concurrence to *Christiansen v. Omnicom Group, Inc.*, 852 F.3d 195 (2d Cir. 2017). In prior decisions, *Simonton v. Runyon*, 232 F.3d 33 (2d Cir. 2000), and *Dawson v. Bumble & Bumble*, 398 F.3d 211 (2d Cir. 2005), the Second Circuit had held that sexual orientation discrimination claims were not cognizable under Title VII. *Christiansen*, 852 F.3d at 202 (C.J. Katzmann, concurring). In recognizing the analytical deficiencies of those prior decisions, Judge Katzmann addressed the phrase "because of . . . sex" and noted the recognition by the United States Supreme Court that an individual is discriminated against "'because of . . . sex' if that person is 'exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80

---

[7](...continued)
> legislature is happy with the way the courts are currently interpreting the law, to the irrelevance of the non-enactment, when it is attributable to nothing more than legislative logrolling or gridlock that had nothing to do with its merits.

*Id.* at 343-44; *see also United States v. Craft,* 535 U.S. 274, 287 (2002) ("[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." (internal citation and quotation omitted)); *Local 598, Council 58 Am. Fed'n v. City of Huntington*, 173 W.Va. 403, 405, 317 S.E.2d 167, 168-69 (1984) ("The failure of the legislature to enact a particular law is not evidence that the legislature rejected the policy underlying that bill.").

(1998) (internal citations omitted)). Further, Judge Katzmann addressed the associational theory of discrimination (actions based upon disapproval of one's relationships, such as interracial or homosexual); gender stereotyping[8] (actions based upon disapproval of one's failure to adhere to socially-imposed expectations of appropriate behavior as woman or man); and traditional sex discrimination. Each of those theories ultimately led Judge Katzmann to the conclusion that discrimination based upon sexual orientation is an act occurring "because of . . . sex." *See also Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1261 (11th Cir. 2017) (J. Rosenbaum, concurring, in part and dissenting, in part) ("Plain and simple, when a woman alleges, as Evans has, that she has been discriminated against because she is a lesbian, she necessarily alleges that she has been discriminated against because she failed to conform to the employer's image of what women should be. . . . And it is utter fiction to suggest that she was not discriminated against for failing to comport with her employer's stereotyped view of women. That is discrimination 'because of . . . sex[.]'"); *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 291 (3d Cir. 2009) (recognizing "the line between sexual orientation discrimination and discrimination 'because of sex' can be difficult to draw" and holding Title VII protects homosexual man for deviating from gender stereotypes even if not for "sexual

---

[8]*See, e.g.*, *Boutillier v. Hartford Pub. Sch.*, No. 3:13-CV-01303-WWE, 2016 WL 6818348 (D. Conn. Nov. 17, 2016) ("[H]omosexuality is the ultimate gender non-conformity, the prototypical sex stereotyping animus."); *Centola v. Potter*, 183 F.Supp.2d 403, 410 (D. Mass. 2002) (observing that sexual orientation discrimination "is often, if not always, motivated by a desire to enforce heterosexually defined gender norms. In fact, stereotypes about homosexuality are directly related to our stereotypes about the proper roles of men and women. . . .").

orientation"); *Videckis v. Pepperdine Univ.*, 150 F.Supp.3d 1151, 1159 (C.D. Cal. 2015) ("Simply put, the line between sex discrimination and sexual orientation discrimination is 'difficult to draw' because that line does not exist, save as a lingering and faulty judicial construct." (internal citations omitted)); *Willis v. Wal-Mart Stores, Inc.*, 202 W.Va. 413, 417, 504 S.E.2d 648, 652 (1998) (addressing "because of sex" language and finding discrimination based on same-sex sexual harassment is recognized cause of action in West Virginia).

The precedent for application of the "because of . . . sex" statutory language has been within the civil realm of sex discrimination cases,[9] rather than hate crimes, primarily because most states now include the more precise "sexual orientation" nomenclature in their statutes. Thus, courts have had very limited opportunity to address the meaning of "because of . . . sex" within the realm of hate crimes.[10] The phrase has the same meaning within hate crimes as within discrimination prohibitions. Attacking a male and shouting homophobic slurs because he is kissing a man most certainly qualifies as committing an act "because of . . . sex." While the majority might find the crime was actually committed "because of sexual

---

[9]Because Title VII, like the West Virginia statute at issue herein, does not include the words "sexual orientation," it is the most analogous statutory scheme in which precedent on the definition of "because of . . . sex" has been extensively developed.

[10]In fact, other than states that include the words "sexual orientation" in their hate crime statutes, only West Virginia and three other states use the word sex in their listings of protections. Those other states' hate crime statutes have not been challenged in the manner we encounter in this case.

orientation," it is a "common-sense reality that it is actually impossible to discriminate on the basis of sexual orientation without discriminating on the basis of sex." *Hively,* 853 F.3d at 351.[11]

Critically, the meaning of the phrase "because of . . . sex" is not altered when one makes the transition from civil to criminal statutes. Nor do traditional tools of statutory "construction" of criminal statutes interfere with such smooth passage; as addressed above, tools of statutory construction are not implicated or invoked where a statute is unambiguous. The rule of lenity, requiring criminal statutes to be construed in favor of a defendant, is not applicable where the statute is unambiguous. *See State v. Green*, 207 W. Va. 530, 538, n.13, 534 S.E.2d 395, 403 n.13 (2000) (holding that when court finds "the statutory text to be unambiguous . . ., we do not consider the rule of lenity."). Thus, applying the statute by employing common, ordinary meanings of phrases does not abrogate existing constitutional or statutory protections for criminal defendants, despite the reality that definitions of such phrases may have received more attention in litigation in the civil realm. *See, e.g., People v. Swain*, 959 P.2d 426, 433 (Colo. 1998) (holding definition of the word "driving" in civil driver's license revocation context also applies in criminal context and specifying that rule

---

[11]Additionally, committing an act of violence because the victims were presumed to have violated stereotypical expectations of males would also constitute an act committed "because of . . . sex," entirely circumventing the need to grapple with concepts regarding the role of sexual orientation.

11

of lenity for statutory construction is inappropriate absent statutory ambiguity); *In re M.S.*, 896 P.2d 1365, 1375 and 1377 n.7 (Cal. 1995) (quoting *Price Waterhouse* discussion regarding meaning of "because of" and finding definitions utilized in civil discrimination realm equally applicable to criminal prosecution for violation of hate crime statutes, reasoning that "'[b]ecause of' is a term in common usage. It connotes a causal link between the victim's characteristic and the offender's conduct, and resembles language found in other civil rights and antidiscrimination statutes."). The prohibitions against bias-motivated actions as separately expressed in civil discrimination statutes and criminal hate crime statutes are intertwined and have developed, to some degree, in concert with one another.

> In recent years, an upsurge in racial hostility and gender tension has been identified in apparently increasing incidents of hate crimes. In response, numerous local, state, and federal statutes, widely viewed as a type of civil rights legislation, have been enacted. This nascent wave of legislation has emerged in the context of a vast expansion of penal legislation on the federal level and a widespread movement to respond harshly to crime.

John Valery White, *Vindicating Rights in A Federal System: Rediscovering 42 U.S.C. S 1985(3)'s Equality Right*, 69 Temp. L. Rev. 145, 235-36 (1996) (footnotes omitted). Anti-hate legislation has typically taken the form of either penalty enhancement or independent legislation. "Both types generally define the unlawful act as acts motivated 'because of' ('based on,' 'on the basis of ,' 'by reason of ,' etc.) . . . [certain protected statuses]. This form is similar to Title VII, the federal employment discrimination statute, a point Chief

Justice Rehnquist invoked in upholding the Wisconsin [criminal] statute." *Id.* at 235 n.293*;*

*see also Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993).[12]

The forthright application of the plain statutory language at issue herein, as I propose, does not place this Court in the proverbial and untenable role of both judge and jury. The present procedural stance is the indictment stage,[13] rather than the trial stage. Allowing Counts I and III to stand would provide the prosecution ample time to prove the assertions, the jury would be properly instructed on evidentiary requirements and burdens of proof, and the State would be required to prove its allegations of statutory violation beyond a reasonable

[12]Any concerns regarding a potential violation of the fair warning doctrine are also unfounded. "The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has often been recognized by [the United States Supreme] Court." *Bouie v. Columbia*, 378 U.S. 347, 350-51(1964). The statutory application espoused herein is not an unforeseeable judicial expansion, as commonly prompts a fair warning doctrine analysis; the statute makes it reasonably clear that the conduct was punishable as a criminal act. *See generally United States v. Lanier*, 520 U.S. 259, 267 (1997). Moreover, this issue has not been addressed previously; nor is this definition indefensible or unexpected in any way. "Due process is not . . . violated simply because the issue is a matter of first impression." *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 159 (2d Cir. 2009). Consequently, there is no "marked and unpredictable departure from prior precedent" that would . . . constitute "an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect." *Rogers v. Tennessee*, 532 U.S. 451, 467 (2001).

[13]This Court subjects sufficiency of indictment findings to *de novo* review. Syl. Pt. 7, in part, *State v. Bull*, 204 W.Va. 255, 512 S.E.2d 177 (1998) ("'[g]enerally, the sufficiency of an indictment is reviewed *de novo*.'" (citation omitted)); *see also State v. Minigh*, 224 W.Va. 112, 119, 680 S.E.2d 127, 134 (2009) (holding standard of review regarding motion to dismiss indictment is generally de novo); *State v. Zain*, 207 W.Va. 54, 58, 528 S.E.2d 748, 752 (1999), *cert. denied*, 529 U.S. 1042 (2000).

doubt. At this juncture, however, the evaluation must concentrate upon the sufficiency of the indictment for a hate crime, and it is my firm belief that the majority of this Court adopted an overly narrow focus, metaphorically missing the forest for the trees.

Based upon the foregoing, I respectfully dissent to the unnecessarily constrained view articulated by the majority herein. I would have found Counts I and III of the indictment sufficient, and I believe the circuit court erred in dismissing those counts.

I am authorized to state that Justice Davis joins me in this separate opinion.