NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0532n.06

No. 09-6398

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARTY GILBERT, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | ***Aug 02, 2011*** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | |
| COUNTRY MUSIC ASSOCIATION, INC.; | ) | |
| COUNTRY MUSIC TELEVISION, INC.; | ) | |
| MTVN DIRECT, INC.; INTERNATIONAL | ) | ON APPEAL FROM THE UNITED |
| ALLIANCE OF THEATRICAL STAGE | ) | STATES DISTRICT COURT FOR THE |
| EMPLOYEES, MOVING PICTURES | ) | MIDDLE DISTRICT OF TENNESSEE |
| TECHNICIANS, ARTISTS AND ALLIED | ) | |
| CRAFTS OF THE UNITED STATES AND | ) | |
| CANADA; INTERNATIONAL ALLIANCE OF | ) | |
| THEATRICAL STAGE EMPLOYEES, | ) | |
| MOVING PICTURES TECHNICIANS, | ) | |
| ARTISTS AND ALLIED CRAFTS OF THE | ) | |
| UNITED STATES AND CANADA LOCAL 46, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: SUTTON and COOK, Circuit Judges; GREER, District Judge.[*]

SUTTON, Circuit Judge. After Marty Gilbert complained that a co-worker had threatened

him based on his sexual orientation, a union hiring hall refused to provide Gilbert with work. Gilbert

filed this lawsuit, alleging sex discrimination and breach of the union's duty of fair representation.

The defendants, a collection of employers and Gilbert's local and international union, filed motions

_____

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

to dismiss, and the district court granted them. Although the relevant federal and state laws do not prohibit sexual-orientation discrimination (requiring affirmance of most of the district court's decision), his breach-of-duty claim against the local union may proceed (requiring reversal in part).

I.

A theater professional, Gilbert organizes awards ceremonies such as the Country Music Association (CMA) Awards and the "Stellar Awards." He is a member of Nashville's Local 46 chapter of the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada (IATSE). CMA, along with MTVN Direct and Country Music Television (CMT), has "exclusive hiring hall agreements" with Local 46. R.5 ¶ 17. Under these arrangements, a union refers members to various employers for jobs.

Through a referral from Local 46's hiring hall, CMA hired Gilbert to work on the 2007 CMA Awards. Gilbert is openly homosexual and, while working the show, a union worker named Milton Jones called him a "faggot" and threatened to stab him. This was not an empty threat, as Jones was facing criminal charges for "having stabbed several homosexuals" in Atlanta. *Id.* ¶ 21. After Gilbert complained, Local 46 stopped referring Gilbert for jobs and changed its referral process to prevent him from qualifying for other jobs. In 2008, Local 46 did not refer Gilbert for his previous job with the CMA Awards, forcing Gilbert to accept "less distinguished and lower paying" freelance work directly from CMA. *Id.* ¶ 31. After Gilbert had secured work at the 2009 Stellar Awards, the Local 46 president convinced the Awards' organizers to withdraw their agreement with Gilbert. The union

also sent an "unsolicited forged letter . . . purported to be sent from [a] third-party" to CMA, CMT and MTVN describing Gilbert's alleged "misconduct" at the 2008 CMA Awards. *Id.* ¶ 35.

When Gilbert complained about Local 46's refusal to refer him for a job at the 2008 CMA Awards, the union filed charges against him based on "events" that occurred at the 2008 awards show. *Id.* ¶ 33. Gilbert denied the charges, claiming they were filed in retaliation for speaking out about being harassed. The union found him guilty and suspended him for six months, causing him to lose job opportunities at MTVN, CMT and CMA.

Gilbert filed a complaint in federal court against Local 46, IATSE, CMA, CMT and MTVN alleging (1) "interference with employment opportunities," (2) discrimination and retaliation under the Tennessee Human Rights Act (THRA), (3) breach of the duty of fair representation and (4) breach of a labor agreement. Gilbert did not raise any federal Title VII claims because he was waiting for notice-to-sue letters from the EEOC.

The defendants filed motions to dismiss. Soon after, the EEOC letters arrived, and Gilbert moved to amend his complaint to add Title VII claims.

The district court granted defendants' motions to dismiss and appeared to deny Gilbert's request to amend his complaint. Gilbert appeals (1) the dismissal of his discrimination and retaliation claims, and (2) the dismissal of his breach of duty-of-fair-representation claims against IATSE and Local 46.

II.

Title VII forbids employers and labor organizations from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1), (c)(1). The THRA says roughly the same thing, *see* Tenn. Code Ann. § 4-21-401, which is why Tennessee law treats THRA and Title VII claims the same, *see Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). Under Title VII, "sexual orientation is not a prohibited basis for discriminatory acts." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006). A claim premised on sexual-orientation discrimination thus does not state a claim upon which relief may be granted.

Title VII, however, does prohibit discrimination "because of . . . sex," a protection that in some circumstances extends to "sex-stereotyping" claims. In *Price Waterhouse v. Hopkins*, an employer passed over a female accountant for partnership in part because she was too "macho" and not "feminine[]" enough. 490 U.S. 228, 235 (1989) (plurality opinion). This amounted to sex discrimination, the Court concluded, because an employer that "acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250. An employer, in other words, discriminates "because of . . . sex" when it makes decisions based on the "degree to which an individual conforms to traditional notions of what is appropriate for one's gender." *Vickers*, 453 F.3d at 762. If an employee pleads "sufficient factual matter" to show discrimination on the basis of sex stereotyping, he thus may survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1948 (2009).

Once before, this court addressed this "curious distinction," *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (Posner, J., concurring), between sexual-orientation and sex-stereotyping discrimination. In *Vickers v. Fairfield Medical Center*, a security guard at a hospital was the victim of "frequent derogatory comments" by co-workers, who called him a "fag" and "gay" and physically harassed him. 453 F.3d at 759. Vickers sued under a sex-stereotyping theory, arguing that "in the eyes of his co-workers, his sexual practices, whether real or perceived, did not conform to the traditionally masculine role. Rather, in his supposed sexual practices, he behaved more like a woman." *Id.* at 763. We rejected Vickers's theory, holding that a sex-stereotyping claim required that he show discrimination based on gender non-conforming "behavior observed at work or affecting his job performance," such as his "appearance or mannerisms on the job." *Id.* "[I]n *Price Waterhouse*," we explained, that included the plaintiff's "manner of walking and talking at work, as well as her work attire and her hairstyle." *Id.*; *see Price Waterhouse*, 490 U.S. at 235 (plurality opinion). But Vickers alleged nothing of the sort, prompting us to dismiss his suit because the charged conduct "is more properly viewed as harassment based on Vickers' perceived homosexuality, rather than based on gender non-conformity." *Vickers*, 453 F.3d at 763.

Gilbert's claim fails for similar reasons. His complaint says that he is "an openly homosexual male," R.5 at ¶ 18, then adds the following: (1) Gilbert's co-worker threatened to stab Gilbert and "any other 'faggot' working with them" because Gilbert "and homosexual males did not conform to [Jones's] male stereotypes," R.5 ¶ 19; (2) union officials were "aware that [Gilbert] was

homosexual at the time" he reported Jones's threats, R.5 ¶ 25, and acted against him on this basis;

and (3) at a union meeting where Jones advocated amending the union's constitution and bylaws to

prohibit sexual-orientation discrimination, a fellow union member "loudly uttered bigoted comments

regarding [Gilbert]'s sexuality and insist[ed] that homosexual[s] not be permitted to disclose to

other[] union members that they are homosexual." R.5 ¶ 28.

Gilbert's allegations involve discrimination based on sexual orientation, nothing more. He

does not make a single allegation that anyone discriminated against him based on his "appearance

or mannerisms" or for his "gender non-conformity." *Vickers*, 453 F.3d at 763. For all we know,

Gilbert fits every male "stereotype" save one—sexual orientation—and that does not suffice to

obtain relief under Title VII.

Gilbert raises up one assertion in his complaint as the answer to this problem. He alleges that

Jones threatened to stab him because "[Gilbert] and homosexual males did not conform to [Jones's]

male stereotypes." R.5 ¶ 19. But this is simply a "formulaic recitation" of the elements of a sex-

stereotyping cause of action and by itself "will not do." *Iqbal*, 129 S. Ct. at 1949. Because the

conduct Gilbert opposed was not an "unlawful employment practice," 42 U.S.C. § 2000e-3(a), his

retaliation claims must also fail. *See Barrett v Whirlpool Corp.*, 556 F.3d 502, 520 (6th Cir. 2009);

*see also Hamm*, 332 F.3d at 1066 (claim of harassment on the basis of sexual orientation cannot give

rise to a Title VII retaliation claim).

No doubt, the events Gilbert describes, if true, are at least in bad taste if not themselves deserving of condemnation. But Gilbert cannot "bootstrap protection for sexual orientation into Title VII" under the guise of a sex-stereotyping claim. *Vickers*, 453 F.3d at 764. Although many States prohibit sexual-orientation discrimination, *see, e.g.*, Colo. Rev. Stat. Ann. § 24-34-402; Mass. Gen. Laws Ann. ch. 151B, § 4, federal law and Tennessee law do not.

### III.

That leaves Gilbert's duty-of-fair-representation claim against Local 46 and its parent organization, IATSE. There is some ambiguity about how the district court treated this claim and what precisely it thought was before it. The court apparently rejected his hybrid claim under the LMRA (which Gilbert no longer pursues) but never addressed his duty-of-fair-representation claim as an independent theory of relief. *See Pratt v. UAW, Local 1435*, 939 F.2d 385, 390 (6th Cir. 1991). In view of the Rule 12(b)(6) stage of this case, we think the district court prematurely dismissed the latter claim.

The duty of fair representation requires a union to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The duty applies to "all union activity," *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S 65, 67 (1991), including the union's operation of a hiring hall, *see Breininger v. Sheet Metal Workers Int'l Ass'n Local Union*

*No. 6*, 493 U.S. 67, 87–88 (1989).  A union violates its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith."  *O'Neill*, 499 U.S at 67.

Gilbert alleges that Local 46:  (1) refused to refer him for jobs he had previously performed and was otherwise qualified for, going so far as to change its usual referral process; (2) contacted Stellar Awards and convinced it to cancel an agreement with Gilbert; (3) sent an "unsolicited forged letter" to Gilbert's employers complaining about Gilbert, R.5 ¶ 35; and (4) convicted him of baseless membership charges, resulting in his suspension and inability to seek employment through the hiring hall.

Taken together, Gilbert's allegations state a claim that Local 46's conduct at a minimum was arbitrary or in bad faith.  Most damaging is the allegation that Local 46 abused its hiring-hall authority to undermine Gilbert's work opportunities.  "[T]here is no balance of power," the Supreme Court has recognized, in hiring halls because "the union has assumed the mantle of employer, [and] the individual employee stands alone against a single entity:  the joint union/employer." *Breininger*, 493 U.S. at 89.  Because a union "wield[s] additional power in a hiring hall" and an "improperly functioning hiring hall" readily can lead to abuse, the Supreme Court has noted that the union's "responsibility to exercise that power fairly *increases* rather than *decreases*." *Id.*

Consistent with these requirements, Gilbert says that Local 46 abused its power by blacklisting Gilbert from future job opportunities despite his qualifications and experience and by undermining his efforts to obtain other work.  If true, this conduct falls "so far outside a wide range

of reasonableness that it is wholly irrational," and constitutes "arbitrary" conduct in violation of the union's duty of fair representation. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010); *cf. NLRB v. Int'l Bhd. of Elec. Workers, Local Union 16*, 425 F.3d 1035, 1040 (7th Cir. 2005) ("A union is presumed to have breached its duty of fair representation if . . . it refuses to refer a member who is eligible under [a hiring-hall] agreement."); *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 34 (D.C. Cir. 1995). Gilbert's allegations that Local 46 sent forged letters to Gilbert's employers and found him guilty of baseless charges in retaliation for his complaints about discrimination also suggest it acted in bad faith through "fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 619.

Although this claim survives at the pleading stage against Local 46, the same is not true with respect to IATSE. Local 46 and IATSE are separate legal entities, and Gilbert's complaint does not offer a single fact suggesting IATSE had anything to do with Local 46's misconduct, let alone that IATSE did anything that was "arbitrary, discriminatory, or in bad faith." Gilbert also has not sufficiently pled an agency relationship between Local 46 and IATSE. Nothing in his complaint suggests that IATSE "instigated, supported, ratified, or encouraged" Local 46's actions, or that Local 46 acted "in accordance with their fundamental agreement of association." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 409 (6th Cir. 1999).

No. 09-6398
*Gilbert v. Country Music Ass'n, Inc.*

IV.

For these reasons, we affirm in part and reverse in part (reversing only the district court's disposition of the breach-of-duty claim against Local 46) and remand for further proceedings.