**Maria CANDINA Plaintiff,**

**v.**

**UNIVERSITY OF MIAMI, Defendant.**

**CASE NO. 1:14–cv–24386–KING**

United States District Court, S.D. Florida.

Signed 10/15/2015

Zandro E. Palma, Zandro E. Palma, P.A., Miami, FL, for Plaintiff.

Eric David Isicoff, Teresa Ragatz, Christopher Michael Yannuzzi, Isicoff, Ragatz & Koenigsberg, Miami, FL, for Defendants.

## FINAL ORDER OF DISMISSAL AND AFFIRMING REPORT AND RECOMMENDATION

JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE, SOUTHERN DISTRICT OF FLORIDA

**THIS CAUSE** comes before the Court upon Magistrate Judge Andrea M. Simonton's September 28, 2015 Report and Recommendation (the "R & R") (DE 27), which recommends granting of Defendant's Motion to Dismiss for Failure to

State a Claim (DE 10), filed December 15, 2014. On October 6, 2015, Defendant filed Objections in Part to the Report and Recommendation (DE 28). The matter is now ripe for determination.

This Court has performed *de novo* review of the record, R & R and Defendant's Objections to the R & R. This Court concludes that Judge Simonton carefully considered the record, correctly analyzed the law, and properly concluded that Defendant's Motion to Dismiss (DE 10) should be granted without prejudice. This Court agrees with the Magistrate's conclusion that Plaintiff adequately demonstrated her claim of gender stereotyping in the charge of discrimination filed with the EEOC and therefore that permitting an amended Complaint would not be futile for lack of exhaustion.

Concluding that the Report contains a thorough and well reasoned recommendation, the Court grants Defendant's Motion to Dismiss for the reasons given by the Magistrate Judge.

Therefore, it is **ORDERED, ADJUDGED, and DECREED:**

1. Magistrate Judge Simonton's Report and Recommendation (**DE 27**) be, and the same is hereby, **AFFIRMED** and **ADOPTED** as an Order of this Court.

2. Defendant's Motion to Dismiss (**DE 10**) be, and the same is, hereby **GRANTED.**

3. This Action is **DISMISSED without prejudice.**

4. The Clerk shall **CLOSE** this case.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 15th day of October, 2015.

1. This matter was initially referred to a predecessor Magistrate Judge, who entered an Order of recusal, as did the three succeeding

## REPORT AND RECOMMENDATION

ANDREA M. SIMONTON, UNITED STATES MAGISTRATE JUDGE

Presently pending before this Court is Defendant University of Miami's Motion to Dismiss for Failure to State a Claim, ECF No. [10]. Plaintiff Maria Candina has filed a Response in opposition, ECF No. [15], and the University has filed a Reply, ECF No. [16]. The Defendant also filed a Notice of Supplemental Authority, ECF No. [26]. The Honorable James Lawrence King, United States District Judge, has referred this Motion to the undersigned Magistrate Judge, ECF No. [17].[1] For the reasons stated below, the undersigned recommends that the Motion be **GRANTED, and that the Complaint be dismissed without prejudice.**

### I. THE COMPLAINT

Plaintiff Maria Candina has filed a four-count Complaint seeking injunctive relief, reinstatement, and damages against her former employer, Defendant University of Miami ("the University"), based upon the University's alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII") due to discrimination based on sex: gender stereotyping (Count 1) and retaliation (Count 2); and, violations of the corresponding Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq. ("FCRA") due to discrimination based on sex: gender stereotyping (Count 3); and retaliation (Count 4).

According to the Statement of Facts set forth in the Complaint, from approximately July 2000 through May 3, 2013, Plaintiff was employed as a registered nurse by Defendant University of Miami. She alleges that she began to experience unlawful

Magistrate Judges, ECF Nos. [18] [19] [20] [21].

discrimination in the beginning of 2011, when a co-worker, nurse Donell Miller, confirmed that Plaintiff was homosexual and had a long-term relationship with another woman. According to the Complaint, nurse Miller was well known as a religious woman who freely expressed her hate against lesbian, gay, bisexual or transgender people, and began directing verbal hostility toward the Plaintiff. The Complaint alleges that in June or July 2011, "Ms. Miller made the following comments about a beautiful girl with a masculine look," stating, " 'Look at that they are disgusting, they make me sick, they should all be tied at the stake, set on fire and burn in hell.' " ECF No. [1] at ¶ 18. According to the Complaint, a staff member, case manager Danny Diaz, responded by rebuking Ms. Miller, telling her that he was ashamed of what she was saying, and that his relative was a lesbian who was a good person. Mr. Diaz complained to the Defendant's Human Resources department, and an investigation was opened. The Plaintiff was interviewed as a witness to the above event. According to the Complaint, after the Plaintiff gave her testimony to high-ranking employees in the Human Resources department, she was asked if she also wanted to file a complaint against Ms. Miller. Plaintiff agreed, and Ms. Miller was suspended for a few days.

Thereafter, Ms. Miller retaliated by increasing her daily harassment against the Plaintiff, and by telling other employees that she would "get rid of" the Plaintiff one way or another." ECF No. [1] at ¶ 21. The Complaint alleges that Ms. Miller created a hostile and intimidating working environment, and "spread the word that Plaintiff was gay and that she had a relationship with another woman," and continued to verbally harass the Plaintiff. ECF No. [1] at ¶ 22. Specifically, in this regard, the Complaint alleged "Ms. Miller continued to make offensive sexually related comments, which transpired hatred and

aversion toward Plaintiff and anybody that did not conform to Ms. Miller's perception of acceptable gender roles." ECF No. [1] at 22.

Plaintiff alleges that she tolerated the above situation for over a year because she loved and needed her job. She also alleges that she knew that Ms. Miller had been counseled and admonished many times and had not changed her conduct; the Plaintiff alleged that she had overheard a conversation between Ms. Miller and Mr. Hinds, the Director of Equality Administration in which Ms. Miller complained that she was being harassed but that she could not be touched because she was black and Bahamian. The Plaintiff alleges that in this same conversation, Ms. Miller stated to Mr. Hinds that he was also from the Bahamas and that everyone in the Bahamas knew each other and helped each other. The Plaintiff alleges that, nevertheless, she complained many times about discrimination and harassment to the Nurse Manager and to the Hospital Administrator, and that she was assured that they would take care of it, and that her complaints had been transmitted to the Human Resources department. Plaintiff then alleges that Ms. Miller switched from the morning shift with Plaintiff to the afternoon shift, and that the Plaintiff was then made Charge Nurse of the morning shift. This limited her interaction with Ms. Miller to staff meetings and change of shift report meetings. Plaintiff alleges that Ms. Miller continued to harass Plaintiff at these times.

According to the Complaint, the events that the Defendant used as a basis to terminate her employment began on March 28, 2013, when she accompanied Dr. Lupi, the Nursing Administrator, to visit patients in the Plaintiff's unit. During the visit, a patient approached Dr. Lupi and complained that Ms. Miller had made offensive comments regarding "gays," which

upset him because he was gay. At that time, the Hospital Administrator, Mr. Tony Santa, approached them to find out what was happening. According to the Complaint, the Hospital Administrator began yelling at the Plaintiff that she was fishing for negative information about Ms. Miller from patients and coercing them to give such information. The Hospital Administrator ceased working for the Defendant a few days thereafter.

The Plaintiff alleges that on April 8, 2013, the Plaintiff used the Ethic–Point reporting line to file a report about continuous harassment and discrimination against her, as well as staff members, patients and students, at the workplace, but she never received a follow-up request for an interview or further information from the Human Resources department.

According to the Complaint, on April 26, 2013, the Plaintiff was called to a meeting with Mr. Hinds, the Director of Equality Administration. Mr. Hinds interviewed her about the March 28, 2013, incident. Mr. Hinds was hostile, and Plaintiff felt that the investigation against Ms. Miller had turned into an investigation of her. She reminded Mr. Hinds that Mr. Diaz had made similar complaints against Ms. Miller in 2011, and that she had complained numerous times since then to the Nurse Manager and the Hospital Administrator. The Complaint alleges that during this meeting, "Plaintiff also informed Mr. Roy Hinds of the harassment and hostile working environment that she had to afford because she did not conform to Ms. Miller's sexual stereotypes, and how nobody put a stop to the conduct of Ms. Miller. Plaintiff went further, and told Mr. Roy Hinds that she wanted to file a formal complaint against Ms. Miller." ECF No. [1] at ¶ 29.

On May 1, 2013, the Plaintiff had another meeting at the Human Resources department, where she was advised that she was suspended for unprofessional conduct for making disparaging comments against another employee, i.e., Ms. Miller; and for coercing a patient to complain about Ms. Miller by bribing him with two cigarettes. Ms. Miller denied having coerced the patient or bribing him, and reminded them that patients were allowed to smoke and that it was common practice for everyone to give cigarettes to the patients in that unit. On the following day, the Plaintiff was terminated for this conduct.

The Plaintiff alleges that this termination was wrongful and that her complaints of discrimination and harassment on the basis of sexual stereotyping were not properly addressed or investigated. She contends that the termination of her employment "was directly and proximately caused by Defendant's unjustified discrimination and harassment against Plaintiff because of her complaints of unlawful discrimination and harassment in violation of both Federal and State Laws." ECF No. [1] at ¶ 34.

Each of the four counts of the Complaint incorporates the above facts, and states in conclusory terms that the Plaintiff was discriminated against based on her failure to conform to gender stereotypes.

Attached to the Complaint is a copy of the Charge of Discrimination that the Plaintiff filed with the EEOC on May 8, 2013. This Charge specifies discrimination based on sex and retaliation, and states the following factual basis to support the Charge:

I worked for the above named Employer from July of 2000 until I was discharged on May 3, 2013. During my employment I was subjected to harassing comments by Ms. Donnell Miller, Charge Nurse. Ms. Miller was aware of my sexual orientation (lesbian) and she often made harassing comments about employees and patients being "gay." Ms. Miller

would make comments liked *"Gay people they should all burn in hell"* and *"they make me sick"*. On April 26, 2013, I was interviewed by Mr. Roy Heinz, H.R. Representative, regarding alleged comments made by Ms. Miller, based on a patient's complaint. In that complaint the patient alleged that Ms. Miller made negative comments about patients, employees and nursing students' sexual orientation and being gay. I was informed that the Employer had discovered during the investigation that I "bribed" a patient with two cigarettes, in order for the patient to provide negative information against an employee whose name was not provided to me. The accusation was not true and I immediately denied it. I was subsequently discharged for bribing the patient.

ECF No. [1–3] at 3. Plaintiff concludes in the Charge of Discrimination that she believes she was discriminated against, and retaliated against, because of her sex/female, because she did not conform to gender stereotypes. Thereafter, the EEOC terminated its processing of the charge and issued a Right to Sue letter. ECF No. [1–3] at 2.

## II. THE MOTION TO DISMISS

Defendant University of Miami has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that it fails to state a claim. Specifically, the Defendant argues that although the Plaintiff asserts that her claim is based on sex discrimination, the facts alleged in the Complaint all relate to alleged discrimination based on sexual orientation, which is not actionable under either Title VII or the FCRA. ECF No. [10]. In addition, the University contends that dismissal with prejudice is appropriate because the Plaintiff failed to exhaust her administrative remedies. Specifically, the University states that although the Plaintiff filed a charge with the EEOC prior to filing her Complaint in this Court, the EEOC charge filed by the Plaintiff related solely to claims of sexual orientation, and therefore, she did not exhaust her administrative remedies with respect to any potential claim of gender discrimination.

In response, the Plaintiff agrees that discrimination based on sexual orientation is not actionable under Title VII or the FCRA; but contends that her case is based on gender discrimination through gender-stereotyping, and not sexual orientation. ECF No. [15]. She contends that the Complaint sets forth sufficient allegations to support this claim for relief, and that she exhausted her administrative remedies since this claim was presented to the EEOC in the charge of discrimination that she presented to that agency. ECF No. [15].

Both parties agree that if the facts alleged in the Complaint are insufficient to state a claim based on gender discrimination, the case should be dismissed under both Title VII, the applicable federal law, and the FCRA, the applicable Florida law (which interprets the FCRA to be the same as federal law). *See, e.g., Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (Florida courts construing FCRA follow federal law under Title VII). Therefore, this Report and Recommendation treats the Title VII federal counts and the FCRA state counts of the Complaint jointly.

## III. FRAMEWORK FOR ANALYSIS

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the facial sufficiency of a complaint. It is well-settled that in order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint does not need detailed factual allegations, a

plaintiff is still obligated to provide the "grounds for his entitlement to relief, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained the pleading requirements which must be met in a complaint if it is to survive a motion to dismiss. The Court emphasized that the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal* at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* Thus, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[2]

## IV.  LEGAL ANALYSIS

### A.  The Complaint Fails to State a Claim Based on Sex Discrimination

■ Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against an employee because of that employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the United States Supreme Court established that discrimination based on sex includes discrimination based on gender stereotyping. The Plaintiff in *Price Waterhouse* claimed that she had been denied partnership because she was too "macho," and that her chances for partnership would increase if she acted more femininely. The Court recognized that employment decisions cannot be made because of a person's gender, and that "an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of

---

**2.** To the extent that Plaintiff relies on language in *Potts v. Howard Univ. Hosp.*, 258 Fed.Appx. 346, 347 (D.C. Cir. 2007) that states it is sufficient for complaint to allege, "I was turned down for a job because of my race," the undersigned notes that this case was based on the now-discarded standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." For a recent discussion of the pleading standards in this Circuit, see *McCullough v. Bd. of Regents of the Univ. Sys. of Georgia*, 623 Fed.Appx. 980, 983 (11th Cir. 2015).

gender." 490 U.S. at 250, 109 S.Ct. 1775. "The critical issue, Title VII's test indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (citation omitted).

■ Both parties recognize, however, that neither Title VII nor the FCRA prohibit discrimination based on sexual orientation alone. *See, e.g., Gilbert v. Country Music Ass'n*, 432 Fed.Appx. 516 (6th Cir. 2011) (affirming dismissal of counts of Complaint brought under Title VII for sex discrimination and retaliation which contained allegations based on sexual orientation, but only conclusory allegation of sex stereotyping); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3rd Cir. 2001); *Simonton v. Runyon*, 232 F.3d 33,35 (2nd Cir. 2000); *Arnold v. Heartland Dental, LLC*, 101 F.Supp.3d 1220 (M.D. Fla. 2015); *Bill v. City of North Lauderdale*, No. 12–61342–Civ, 2013 WL 1289165, at *1 n.3 (S.D. Fla. Mar. 26, 2013); *Anderson v. Napolitano*, No. 09–60744–CIV, 2010 WL 431898 (S.D. Fla. Feb. 8, 2010).

The task at hand, therefore, is to determine whether the allegations in the Complaint are sufficient to establish a plausible claim that the Plaintiff suffered discrimination based on her gender as a female. The Plaintiff appears to argue that because the harassment by her co-worker was based on the fact that Plaintiff was a female who had a relationship with another woman, this constitutes gender discrimination. If this were the law, however, all cases alleging discrimination based on sexual orientation would fall within the proscription of Title VII. The Court in *Anderson v. Napolitano*, expressly rejected an almost identical claim that a homosexual male suffered from gender discrimination as evidenced by derogatory comments about his sexual orientation, where the Complaint alleged that soon after learning of Anderson's sexual orientation his employer began a "campaign of harassment and discrimination because Plaintiff failed to meet Defendant's sex stereotypes for men." *Anderson*, at *6–7.[3] Citing *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 290–92 (3d Cir. 2009), the Court in *Anderson* emphasized that to hold that every case of sexual orientation discrimination translated into a triable case of gender stereotyping discrimination would be contrary to the Congressional determination that sexual orientation discrimination is not cognizable under Title VII. Other courts have reached the same result and granted motions to dismiss where the allegations of the Complaint contain only facts related to sexual orientation discrimination. *See, e.g. Simonton, supra.* (affirming dismissal of complaint), and cases cited therein; *Gilbert, supra.* (same).

The allegations of the Complaint fail to set forth any plausible basis to support the Plaintiff's claim of gender stereotyping, and the mere conclusory label of "gender discrimination" or "gender stereotyping" cannot fill this void.[4] There are no allegations to support a plausible claim that the Plaintiff suffered discrimination because she did not act like a woman, or that she was insufficiently feminine, as in *Price Waterhouse*. In fact, the allegations of the Complaint state that she was not treated in a discriminatory fashion during many

---

3. Although *Anderson* was decided on summary judgment, the legal principles regarding what constitutes sex discrimination under Title VII remain applicable to a motion to dismiss.

4. The Plaintiff does not even hint at the existence of any other form of gender discrimination.

years of employment until Ms. Miller learned that she was a lesbian. Plaintiff has not claimed that she was treated differently than similarly situated males, or based solely on the fact that she is female. In this regard, the undersigned notes that there are no allegations that male and female homosexuals are treated differently; the only allegations of the Complaint which discuss gay males, in fact, point to the fact that Ms. Miller harbored the same animus toward them, as evidenced by the male patient's complaint to Dr. Lupi, the Nursing Administrator. In sum, since the facts in the Complaint allege mistreatment based solely on sexual orientation, Counts 1 and 3 of the Complaint, which assert sex discrimination under Title VII and the FCRA, fail to state a claim upon which relief can be granted and should be dismissed.[5]

### B. The Complaint Fails to State a Claim Based on Retaliation

■ To establish a claim for retaliation, a plaintiff must show (1) that she engaged in engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal relationship between the protected activity and the adverse employment action. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). To meet the requirement of engaging in statutorily protected activity, a plaintiff need not prove the underlying claim of discrimination, however, but must establish a reasonable and good faith belief that the discrimina-

tion existed. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000). This is a two-pronged requirement with both subjective and objective components: A plaintiff must allege that her belief regarding discrimination was honest and in good faith; and must also establish that the belief, although mistaken, was nevertheless objectively reasonable. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997); *Harper*, at 1388. Thus, in *Harper*, the Eleventh Circuit Court of Appeals affirmed the dismissal of a Complaint alleging that the Defendant's hair grooming policy constituted unlawful discrimination based on sex. In reaching this result, the Court stated that plaintiff's belief was not reasonable based on the unanimity with which the courts had declared similar grooming policies non-discriminatory. *Harper*, at 1388.

■ In the case at bar, both parties treat the retaliation claim in a cursory fashion, arguing at least by implication that the retaliation claim rises or falls on the same basis as the underlying sex discrimination claim. Specifically, the Defendant asserts that because sexual orientation discrimination is not cognizable under either Title VII or the FCRA, as a matter of law, complaints about such activity cannot constitute statutorily protected activity. ECF No. [10] at 8–9. The Plaintiff counters that because the Complaint alleges facts sufficient to state a claim of gender-stereotyping, that her complaints about such sexual stereotyping constitute statutorily protected activity that can

---

**5.** The undersigned has not overlooked the one vague reference in the Complaint to the incident in the summer of 2011 where Ms. Miller made a comment about a "beautiful girl with a masculine look," stating "Look at that they are disgusting, they make me sick, they should all be tied at the stake, set on fire and burn in hell." It is unclear whether Ms. Miller characterized the subject of her comments as having a masculine look, or whether that is Plaintiff's description. This one comment, even assuming that it was directed toward a person who did not conform to gender stereotypes based on appearance, does not indicate discrimination based on gender stereotyping since the context contained in the allegations of the Complaint reflects that it was a comment directed against all homosexuals.

serve as the basis for her retaliation counts. ECF No. [15] at 9.

Based on the facts alleged in the case at bar, it makes sense for the parties to have considered the sufficiency of the retaliation claims based on the sufficiency of the underlying sex discrimination claims. It is well established that discrimination based on sexual orientation, however reprehensible, is not prohibited by either Title VII or the FCRA. As stated previously, the facts alleged in the Complaint only describe discrimination based on sexual orientation. The conclusory label of "gender stereotyping" is not sufficient to substitute for facts giving rise to a plausible claim of discrimination based on sex. Thus, given the well-established law, the Plaintiff has failed to set forth facts sufficient to establish that she had an objectively reasonable basis for believing that the Defendant engaged in prohibited sex discrimination; and, the Complaint fails to set forth a plausible basis to establish that she engaged in statutorily protected activity. Therefore, the Plaintiff's claims for relief based on retaliation in Counts 2 and 4 of her Complaint should be dismissed.

### C. The Plaintiff Exhausted Her Administrative Remedies

■ The Defendant argues that dismissal should be with prejudice because the Plaintiff failed to exhaust her administrative remedies with respect to any claim of gender discrimination. For the reasons set forth below, the undersigned disagrees.

■ As argued by the Plaintiff, the purpose of the exhaustion requirement is to permit the EEOC to have an opportunity to investigate the alleged discriminatory practices so that it can attempt to resolve the matter without the need for a lawsuit. *Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The

Eleventh Circuit Court of Appeals succinctly described the exhaustion requirement as follows in *Penaloza v. Target Corp.*, 549 Fed.Appx. 844, 848 (11th Cir. 2013):

A judicial complaint is limited by the scope of the EEOC investigation "which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]" and should construe an EEOC complaint broadly. *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004). Nevertheless, judicial discrimination claims are only allowed if they "amplify, clarify or more clearly focus" the allegations in the EEOC complaint; "allegations of new acts of discrimination are inappropriate." *Id.* at 1279–80.

Thus, in *Penaloza*, where the EEOC charge was based on sex and pregnancy discrimination, the Court found that a claim of disability discrimination had not been exhausted since the disability claim did not logically grow out of those claims. Where, on the other hand, the facts alleged in the charge of discrimination are sufficient to put the employer on notice of the claim of discrimination, the failure of a party to provide all details of the alleged discrimination in the EEOC charge will not require dismissal based on failure to exhaust administrative remedies. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–67 (5th Cir. 1970) (dismissal for failure to exhaust administrative remedies reversed where the claims alleged in the Complaint were within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination).[6]

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the

In the case at bar, the Plaintiff specifically stated in her EEOC charge that she had been the victim of sex discrimination and retaliation because she did not conform to gender stereotypes, and she recited an abbreviated version of the facts contained in the Complaint she filed in the case at bar. This was sufficient to put the EEOC on notice of her claims, and satisfies the exhaustion requirement with respect to any gender stereotyping claims she brings that could reasonably be expected to grow out of the charge of discrimination. Thus, the claims she has attempted to assert in the Complaint she filed in the case at bar were administratively exhausted, although as explained above, the facts alleged do not plausibly state a basis for relief.

The Defendant relies upon the failure of the Plaintiff to exhaust her administrative remedies with respect to her claim of gender stereotyping to argue that permitting the Complaint to be amended would be futile. Since, as analyzed above, the undersigned concludes that she adequately presented this claim in the charge of discrimination she filed with the EEOC, permitting an amended Complaint would not be futile for lack of exhaustion. It may well be that the Plaintiff cannot allege facts that plausibly state a claim for relief based on gender stereotyping, but she should not be precluded from trying based on her failure to exhaust her administrative remedies.[7] The Plaintiff has requested that, if the Court dismisses the Complaint, that she be granted leave to file an Amended Complaint, and the undersigned

recommends that she be given this opportunity.

## V. CONCLUSION

Based upon the foregoing analysis, the undersigned concludes that the facts in the Complaint clearly set forth incidents of harassment based on sexual orientation, but do not state a plausible claim for relief based on sex/gender stereotyping; nor do they set forth a plausible claim of retaliation based on sex/gender stereotyping. Therefore, it is hereby

**RECOMMENDED** that the Motion to Dismiss be **GRANTED, and that the Complaint be dismissed without prejudice.**

The parties will have until October 13, 2015, to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida, on September 28, 2015.

---

Eleventh Circuit Court of Appeals held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

7. If an Amended Complaint is filed, the Defendant is not precluded from arguing that it

contains claims that were not administratively exhausted; but, this determination cannot be made before an Amended Complaint is filed. Any Amended Complaint will be reviewed in accordance with the exhaustion principles set forth above.